# Richmond

## SPANGLER v. ASHWELL.

### November 12, 1914.

1. JURORS—*Disqualification.*—A juror is not rendered incompetent to sit in a case by the fact that his brother has a similar suit pending against the same defendant involving a similar state of facts.

2. EVIDENCE—*Deeds—Recital of Payment of Consideration.*—The recital in a deed conveying land that the whole consideration thereof has been paid is only *prima facie* evidence of the fact of payment, and may be contradicted by parol evidence.

3. STATUTE OF FRAUDS—*Executed Contract for Sale of Land.*—Where a contract for the sale of real estate has been executed by a deed of conveyance to the purchaser and all that remains to be done is the payment of the purchase money, the case is not within the statute of frauds.

4. PRINCIPAL AND AGENT—*Credit Extended to Agent—Release of Principal—Case at Bar.*—When an agent contracts with a third person for a known principal and credit is extended to the agent, the principal cannot afterwards be held liable upon the contract, but in the case at bar there was evidence which the jury had the right to believe that the credit was not extended to the agent but to the principal, and their verdict so finding cannot be disturbed.

Error to a judgment of the Circuit Court of Bedford county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

*Samuel Griffin* and *Malcolm Griffin,* for the plaintiff in error.

*S. S. Lambert, Jr.,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This case is a sequel to that of *Spangler* v. *Ashwell et al*, 114 Va. 325, 76 S. E. 281. The sole point considered in that case was, whether it was within the jurisdiction of a court of law or a court of chancery, and, in the opinion, the court uses the following language: "The whole controversy turns upon whether or not Ziegler was the agent of Spangler, and that is a matter which in all its phases can be fully heard and determined in a court of law, whether the rights of the plaintiffs in the actions at law depend upon the actual or implied agency of Ziegler, or upon a subsequent adoption and ratification of such agency by Spangler by reason of his having availed himself of the benefits of a contract entered into by an unauthorized agent. . . . All we now decide is that the whole subject is one exclusively within the jurisdiction of common law courts."

On the first Monday in October, 1907, Ashwell filed his declaration in an action of assumpsit against Spangler, in which he claims that one Amos Ziegler, as the agent of Spangler, made a promissory note, bearing date the 16th of March, 1903, by which he promised to pay the plaintiff $600 four months after date, and avers that the note, though made and signed by Ziegler, was made and signed by him as the agent of Spangler, and thereupon the defendant became liable to pay the plaintiff $600 according to the tenor and effect of the promissory note; and notwithstanding his promises the defendant, though often requested, did not pay the note, by which neglect and refusal the plaintiff sustained damages in the sum of $1,000.

In the second count it is charged that Spangler, the defendant, acting through his duly authorized agent, Ziegler, purchased from the plaintiff certain mineral

63

rights in land situated in Bedford county, for which mineral rights he then and there, by his agent, agreed to pay to the plaintiff the sum of $1,000 upon the execution and delivery of a deed for the mineral rights; and further avers that the defendant did by his agent, Ziegler, pay unto the plaintiff $400, a part of the purchase price; whereupon, the plaintiff, relying upon the promise of the defendant, then and there made and delivered to the defendant a deed for the mineral rights, as he had agreed to do, which deed was accepted by the defendant, by his agent, and was duly recorded in the clerk's office of Bedford county; and then avers that the defendant has not paid to the plaintiff the balance due on the purchase price, to-wit, the sum of $600, nor any part thereof though often requested so to do, to the damage of the plaintiff.

At the October term, 1908, a third count was added to the declaration, in which the plaintiff avers, that Ziegler so represented himself to the plaintiff and others, with the result that on the 16th day of March, 1903, at the special instance and request of Ziegler the plaintiff covenanted and agreed with him to sell and convey unto the defendant, Barr Spangler, for the sum of $1,000, cash, which Ziegler, acting on behalf of the defendant then and there promised and agreed that defendant would pay to the plaintiff, certain mineral rights in the plaintiff's tract of land situated on the south side of Bedford county; and the plaintiff avers that the defendant, by his agent, did pay unto the plaintiff a certain sum, being a part of the purchase price, to-wit, the sum of $400; whereupon, the plaintiff did then and there make and deliver to Ziegler a deed of bargain and sale conveying said mineral rights in fee simple to Barr Spangler, the defendant, which deed was accepted by the defendant, and was duly recorded in the clerk's office of Bedford

county, Virginia, and the defendant has since the date of said sale claimed title to said mineral rights by virtue of said deed, and is now holding said estate and claiming title thereto by virtue thereof; and that by reason of the premises there is implied by law a promise on the part of the defendant, Barr Spangler, to pay to the plaintiff the amount of the purchase price, and that in legal intendment the defendant did, upon the acceptance of the deed, and does so long as he holds such land pursuant to said deed, promise to pay unto the plaintiff the purchase price in full; and that defendant has paid the sum of $400 on account of the purchase price, but the balance due thereon, to-wit, the sum of $600, with interest from July 16, 1903, though often requested so to do, the defendant has refused to pay and still doth refuse, to the damage of the plaintiff $1,000.

These counts the defendant demurred to. The demurrer was overruled, and the plea of non assumpsit was filed; and upon the trial of the issues before a jury a verdict and judgment were given for the plaintiff, and the case is before us upon a writ of error.

During the progress of the trial the note made by Ziegler for $600, payable to the plaintiff, was offered in evidence, and its introduction was objected to by the defendant; and thereupon counsel for the plaintiff stated to the court that the note was offered as evidence of the balance due and the time within which it was to be paid; that the basis of plaintiff's claim is upon the ground of ratification of the transaction by the acceptance of the benefits; and that the plaintiff was seeking to hold Barr Spangler responsible in this transaction to that extent only; and that they were not proceeding under the first count in the declaration.

The proceeding was really upon the count in the declaration filed at the October term, 1908, and without

expressing any opinion as to the other counts, we are satisfied that it presents a good cause of action.

After the jury had been empaneled and sworn, and had heard a part of the evidence, counsel for the plaintiff stated to the court that he had discovered that C. H. Owen, one of the jurors, was a brother of A. T. Owen, a plaintiff in a similar case against Barr Spangler, involving similar facts, and thereupon offered that the juror be, by consent, withdrawn; whereupon counsel for the defense, without agreeing to accept the offer, objected to C. H. Owen upon the ground that he was an incompetent juror to try the case, being a brother of a plaintiff in a similar action to be thereafter tried involving a similar state of facts. The objection was overruled and the court allowed Owen to remain on the jury; and this ruling of the court is the basis of plaintiff in error's first assignment of error.

In *Richardson* v. *Planter's Bank,* 94 Va. 130, 26 S. E. 413, it appears that during the examination into the fitness of the jurors summoned for the case, they were asked by counsel for the plaintiff if any of them were indebted to the defendant. Counsel for the defendant objected to the question, the court sustained the objection and refused to permit the question to be answered, and this action of the court was assigned as error. This court, in passing upon the question, said: "Confidence in the trial by jury depends upon the purity of the tribunal, and the fairness of its decisions. To secure this the trial must be by impartial men. Purity of the tribunal is the watchful care of the law, and it has guarded against the influence of those passions most likely to pervert the judgment of the jurors in deciding upon the conduct and controversies of their fellow-men.' If the juror does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related

to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law. The last disqualification has been applied in numerous business relations. The partner or the clerk or other employee, of either of the parties has been held to be incompetent. But we have been cited to no case that has gone so far as to hold that a debtor of the defendant was incompetent. To hold, as a legal presumption, that such relationship would be likely to warp the judgment would be, in our opinion, to estimate too cheaply integrity under the sanction of an oath."

In *Southern Ry. Co.* v. *Oliver,* 102 Va. 710, 47 S. E. 862, which was a suit for damages for personal injuries, it appeared that one of the jurors had a claim for a personal injury inflicted upon him by the same company, upon which he intended to sue; but the court held that this was no ground of exclusion. "He (the juror) may have had an honest claim against the defendant company and yet regarded his oath as a juror, and there is nothing whatever in this record to indicate that he did not."

In the case before us the juror had no interest whatever and we cannot hold that he was rendered incompetent because his brother had a claim against the defendant.

Coming, then, to the merits of the case, we find the facts to be as follows: Spangler is a citizen of Lancaster county, Pennsylvania, and is closely connected, either by blood or marriage, with Ziegler, who owed him a large unsecured claim, which he was unable to pay. Some time in June, 1901, as appears from Spangler's deposition, Ziegler called upon him and stated that he had the prospect of making a large sum of money out of mineral rights in asbestos land that he had under option in Bedford county, Virginia, and that to consummate the purchase he would have to have financial assistance. He

further stated that A. F. Hostetter, a lawyer and his relative residing in Lancaster, Pa., had promised to go to Virginia, and look the property over to see whether or not he would be safe. Spangler says: "I then placed $4,000 in the hands of Mr. Hostetter with instructions to give it to Mr. Ziegler if he regarded the loan as well secured by these properties, and provided also that Mr. Ziegler would have the deeds made in my name to be held by me as security for the money loaned him, and also for my prior claims against him. A short time after I furnished him with $6,500 additional, making in all $10,500 loaned him for the purchase of these Virginia properties and for which I required him to give me his judgment note bearing six *per cent.* interest from the date thereof, which I now hold against him." Spangler goes on to say that he never felt that he had any interest in these properties except as security for the loan advanced Ziegler; that Ziegler never was his agent, or authorized to act in his behalf, or to enter into contracts for him, or obligate him in any manner whatsoever; that he had no instructions other than to have the deeds made in his (Spangler's) name for the properties, as security for the money loaned him by Spangler at this time, and for money previously advanced to him.

Ziegler secured options upon a number of tracts of land which were supposed to contain asbestos, and Spangler sent down Mr. George R. Heisey, an attorney, to ascertain if the titles to those properties upon which options had been secured were all right. He gave Mr. Heisey $6,500 which was in addition to the $4,000 already advanced through Mr. Hostetter for the same purpose. It seems to have been arranged that the several land owners from whom the options had been obtained were to meet Mr. Ziegler, Mr. Heisey and Mr. Kemp, a Virginia lawyer, in Bedford City on a certain

day to receive the amounts that were due them.  When
an account was taken of the amounts due upon the sev-
eral options, it was found that there was not money
enough on hand to pay them all in full, and thereupon,
according to the evidence of William D. Ashwell, the
defendant in error, Ziegler and Heisey insisted that
Ashwell should take his *pro rata* share of the money in
hand, and that a note should be given for the residue
of $600.  "They claimed," said Ashwell in his testi-
mony, "that the remainder was perfectly all right.  Mr.
Heisey said he was representing Barr Spangler, and
that he knew his circumstances and knew he was per-
fectly able to pay every cent of the money, and they per-
suaded me to take this amount and that they would
pay this other within four months of that time, $600.00.
They claimed it wouldn't be sixty days before I got the
$600 that was due me, but they wanted to fix the date
for four months so that they would be sure to have it
within that time."  The amount due Ashwell and the
consideration named in the deed from him was $1,000,
so that he received $400 in cash and a note made by
Ziegler, but which he was assured would be paid by
Spangler, for $600.  He says that in the transaction he
relied upon the credit of Barr Spangler and not of
Ziegler; that Ziegler always told him that he had no
money at all, but that Spangler did have money and
was able to pay any contract.

Under these circumstances Ashwell delivered the deed
which bears date the 24th day of January, 1903, and
conveys to Barr Spangler, in consideration of $1,000,
paid to Ashwell by Spangler, "receipt whereof they
hereby acknowledge . . . all the property real and
mixed, and especially all minerals, oils, gases or fluids
and all the rights, uses, easements, appurtenances and
heriditaments, corporeal and incorporeal, mentioned and

contracted for in any options heretofore given, or which may be herein particularly released, granted or conveyed and not in said option or options mentioned, and especially the following:'' then proceeding to enumerate asbestos, mica, iron, coal, etc.

The testimony of Mr. Spangler is, we think, very significant. From it, it appears that Ziegler was largely indebted to him and was insolvent, and that both Ziegler and Spangler hoped, out of the options obtained upon mineral lands in Virginia, to realize a profit which would not only reimburse Spangler for the money advanced to secure the options but would enable Ziegler to satisfy his existing debt to Spangler. He says he placed $4,000 in the hands of Hostetter, with instructions to give it to Ziegler if he regarded the loan as well secured by these properties, ''and provided also that Mr. Ziegler would have the deeds made in my name to be held by me as security for the money loaned him, and also for my prior claims against him.''

Mr. Spangler received the deed from Ashwell, and according to the testimony of Mr. Heisey he, several months after these transactions, ''prepared deeds for these same properties from Barr Spangler to the North American Asbestos Company and deposited them with DeHaven and Townsend, of New York City, with instructions, upon payment of the stipulated price by this company, to deliver the deeds, and of the proceeds remit to Barr Spangler $10,500, with interest, and the balance to be paid to Amos Ziegler;'' but Mr. Spangler says in his deposition that he held those lands as security for the money loaned Ziegler, ''and also for my prior claims against him.'' Spangler knew the amount of money he had confided to his agents; he knew the aggregate sum they had agreed to pay for the several options; and must, therefore, have known that the cash which he had handed

over to them was inadequate to satisfy the consideration paid for the options, and if he is not required to pay the $600 due to Mr. Ashwell, the effect of it will be that he will have taken out of Ashwell's pocket $600 for which Ashwell will have received a promissory note executed by a man whose insolvency is conceded; in other words, Spangler would have Ashwell's money or land, and Ashwell would have Spangler's claim upon an insolvent debtor. It is true that Ashwell recites in his deed that the whole consideration has been paid, but it is familiar law that that recital is only *prima facie* evidence of the fact of payment.

In *Trout* v. *N. and W. Ry. Co.*, 107 Va. 576, 59 S. E. 394, this court says: "It is settled law that the consideration actually paid, or promised, can be shown to have been other than that recited in the instrument, or the fact of payment of the consideration agreed upon may be contradicted in an action for its recovery."

And in *Fowlks* v. *Lea*, 68 L. R. A. 925, where a large number of authorities are considered, it is held that the acknowledgment of the receipt of a consideration in an instrument conveying real estate may be contradicted by parol; and in a note, citing a number of authorities, it is stated that an action to recover the whole or a part of the purchase price of land conveyed may be maintained, although the deed contains an acknowledgment of payment of the purchase money.

Nor is this case affected by the statute of frauds. The interest in land is conveyed by deed. All that remains to be done is the payment of the purchase money, and such a case has been uniformly held not to be within the operation of the statute of frauds. See Browne on Statute of Frauds (5th ed.), sec. 117.

"When an agent contracts with a third person for a known principal and credit is extended to the agent, the

principal cannot afterwards be held liable upon the contract," is a principle earnestly contended for by the plaintiff in error, and we do not question its soundness in a case to which it applies; but here, if the testimony of Ashwell be true, and the jury may well have believed him, the credit was not extended to Ziegler, whom himself admitted his want of credit and whose insolvency is established by the testimony of the plaintiff in error. It would have been inconceivable folly on the part of Ashwell if, under the circumstances, he had extended credit to Ziegler, whom he knew, by his own admission, to be insolvent, and the truth of those admissions is established beyond question by the testimony of plaintiff in error.

We think we have said enough to present our views of the principles of law applicable to the facts which we have recited and disclosed by the record, and without discussing in detail each and every assignment of error, we are of opinion that the case was fairly submitted to the jury, and the judgment of the circuit court is affirmed.

*Affirmed.*