# Richmond

C. S. Taylor Burke, Etc. v. R. Stanley Sweeley and Others.

January 13, 1941.

Record No. 2283.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Albert V. Bryan,* for the appellant.

*Charles Pickett, Maurice D. Rosenberg* and *Robinson Moncure,* for the appellees.

BROWNING, J., delivered the opinion of the court.

Certain real estate in Fairfax county, Virginia, was conveyed in trust on July 17, 1920, to C. S. Taylor Burke, trustee-appellant, to secure the payment of the sum of $6,000.00. On April 1, 1922, the owner of the said real estate conveyed it to Edwin S. Sweeley and Sadie A. Sweeley, his wife, as tenants in common, subject to the said deed of trust. On May 6, 1922, the Sweeleys executed a deed of trust on the property for the sum of $4,000.00, which represented purchase money, evidenced by eight notes of $500.00 each.

Sadie A. Sweeley, the wife, died intestate on July 17, 1923, leaving her husband surviving her, and R. Stanley Sweeley, Clarence F. Sweeley and John Norman Sweeley, her sons, as her only heirs.

On May 26, 1925, Edwin S. Sweeley, widower, conveyed his interest, being one moiety, in the property, to secure the payment of a note for the sum of $4,500.00, payable to Anna M. Sweeley, who was his sister and housekeeper. This $4,500.00 note remained in the keeping of Edwin S. Sweeley, being found in his lock box after his death. Only $3,000.00 had ever been advanced against it.

The second trust of $4,000.00 had been reduced to $1,000.00, represented by two notes of $500.00 each. These notes had been acquired by Anna M. Sweeley at the instance of her brother, Edwin S. Sweeley.

On July 17, 1926, the principal amount of the first deed of trust became due and Edwin S. Sweeley declined to assume its payment or make further payments thereon because he was not the sole owner of the property. On September 24, 1926, the appellant-trustee offered the property for sale at public auction. One of the appellees, John Norman Sweeley, appeared at the sale and was an active bidder through a "straw man". The property was knocked down to Edwin S. Sweeley at $15,000.00. The trustee conveyed the property to Edwin

S. Sweeley on October 1, 1926, the deed reciting the receipt of the purchase price. Actually the $15,000.00 was not paid. The only money paid on account of the purchase price was the sum of $6,266.50, which was the net proceeds of a loan of $6,500.00, procured simultaneously by a new deed of trust on the property executed by the said Sweeley.

The only money received by the trustee, to-wit, the above sum, according to the evidence, was applied to the payment of the original first trust and the costs of sale. The trustee failed to file a statement of the account of his sale with the commissioner of accounts. From this failure of the performance of his duty arises the trouble which is the basis of this acrimonious and unhappy litigation.

At the time of the sale John Norman Sweeley was within six weeks of being twenty-one years old. R. Stanley Sweeley was twenty-three years old, and Clarence F. Sweeley was seventeen, attending school, and living on the property with his father a part of the time and in the city of Alexandria the remainder. The property is located about a mile from Alexandria. Anna M. Sweeley had lived on the property with her brother for many years. She was his housekeeper. Her brother attended to her business affairs and managed her financial interests with the advice of the Burke & Herbert Bank & Trust Co., and the appellant-trustee, its president.

The trustee accepted the assurance of Edwin S. Sweeley that he had arranged with his sister to extend the liens on the second and third deeds of trust and had also arranged with his sons for the satisfaction of their interests as heirs of their mother. The evidence strongly tends to show that these representations were true, though each of the sons denied it. The fact that almost twelve years elapsed without any demands for payment of the deeds of trust, or on account of the interests of the appellees, as heirs of Sadie A. Sweeley, is a powerful

circumstance tending to show that the assurances made to the trustee by the purchaser were founded in fact.

During this period of quiescence Edwin S. Sweeley died and the bank clerk who had made the significant notation on the two notes, belonging to Anna M. Sweeley, to-wit: "extended indefinitely", also passed away. Thus two persons, in whose breasts there naturally reposed the most definite and accurate information of the matters now being considered, could not be heard to speak as to them.

This suit was instituted in January, 1939, and its original purpose was the partition of the property.

Upon the death of Sadie A. Sweeley her interest in the property passed to the heirs, the appellees referred to, and upon the death of Edwin S. Sweeley his interest passed to the same persons. Thus these sons became by inheritance the sole owners of the property subject to the liens referred to and to the unpaid purchase money. Of course there could be no clear devolution of the property until it was paid for and the liens extinguished.

The Sweeley sons stand in the shoes of their father; they occupy no higher ground in law or equity.

Counsel for the appellant-trustee very succinctly states the effect of the decree of the lower court.

"Analyzing the decree, we find that the lower court held that on the purchase price of $15,000.00, a cash payment of $6,266.50 was made, the purchaser was credited with his property interest * * * of $4,631.57 (which thereby gave credit for the third trust, as it was against *his* property interest only) and the second lien of $1,000.00, the credits aggregating $11,898.07 and leaving an unpaid balance of $3,111.93.

"Of course, the trustee was entitled to credit for the purchaser's own interest in the property, although John, Stanley, and Clarence Sweeley have even sought to recover from the trustee an amount equivalent to what would have been payable to Edwin S. Sweeley by the

trustee, had he paid cash and not taken credit for his interest.

"The court rightly held that the second and third trusts were still liens and not divested by the foreclosure. Our complaint is that the court did not *pari ratione* hold that the interest of the heirs of Sadie A. Sweeley was likewise not disturbed by the foreclosure sale to Edwin S. Sweeley."

Counsel for the appellant-trustee ably presents his case in his petition and has employed a number of legal doctrines as applicable to its different phases, but we think a discussion of all of them is not necessary to this decision.

The case is in a court of equity and its heart is in the fact that the $15,000.00 consideration was not paid. Only a part of it was paid. That part was applied to the payment of the first deed of trust debt. That was all that the trustee received. He receipted for the full amount of the purchase price by the terms of the deed but, in spite of that recital, he says that he did not receive it. The purchaser, Edwin S. Sweeley, did not pay it to him, according to the testimony of W. P. Woolls, attorney, who handled the transaction. This no one has gainsaid. Under these circumstances is it equitable that he should be made to pay to anyone money that he has never received—has never had?

The appellees, who are contra-minded, urge that he admitted the receipt of the purchase price in full and that it is now inequitable and illegal for him to be heard to deny his own solemn averments. That this position is unsound is made plain by the following authorities: In the case of *Spangler* v. *Ashwell,* 116 Va. 992, 1001, 83 S. E. 930, 933, this is said:

"In *Trout* v. *Norfolk & W. Ry. Co.,* 107 Va. 576, 59 S. E. 394, 17 L. R. A. (N. S.) 702, this court says: 'It is settled law that the consideration actually paid, or promised, can be shown to have been other than that recited in the instrument, or the fact of payment of the

consideration agreed upon may be contradicted in an action for its recovery.' ''

■ This court in the case of *Wood* v. *Southern Shale Brick Corp.*, 173 Va. 364, 371, 4 S. E. (2d) 360, 363, quotes from an annotation in 100 A. L. R., 1, 17, appended to the case of *Halsey* v. *Minnesota-South Carolina Land & Timber Co.*, 174 S. C. 97, 177 S. E. 29:

''So, it is said in *Davis* v. *Gann* (1895), 63 Mo. App. 425, that, where the consideration is a mere recital of an existing fact, it may be shown to be other than that recited; that if the consideration is recited to have been paid, it may be shown that it was not; that if it be recited to be one sum, it may be shown to be a different sum; and that if it is recited as being money, it may be shown to be some article of property; but that 'whenever the consideration goes beyond mere recital and becomes contractual, thereby creating and attesting the right, it cannot be varied.' ''

In American Jurisprudence, vol. 16, page 684, paragraph 438, we find this statement:

''There is a difference of opinion as to whether the receipt of consideration may be disputed where it is acknowledged in the deed. In the earlier authorities, the view was taken that the acknowledgment of the receipt estops the grantor from showing that it had not been paid. On the other hand, the modern and now almost uniform rule is that the recital in a deed of the receipt of consideration does not preclude parol evidence of its nonpayment, especially when attacked by a stranger on the ground of fraud. The acknowledgment of receipt is only *prima facie* evidence of payment. Similarly, where the receipt is indorsed on the deed, it is not conclusive evidence of payment.''

In *Federal Land Bank of Columbia* v. *Robertson*, 210 N. C. 436, 187 S. E. 575, 576, we find the following: ''Notwithstanding the trustee's deed recites a bid of $5.00, it is competent to show by parol, or otherwise, the real consideration or the true terms of the bid.''

In *Ballard Bros. Fish Co.* v. *Stephenson*, 4 Cir., 49 F. (2d) 581, 584, the Federal Circuit Court said, through Judge Parker:

"It is true that in Virginia the purchaser from a trustee is not required to see to the application of purchase money (Virginia Code of 1924, section 6270); but, if he does not pay the purchase money, and legal title is conveyed to him, he takes it subject to the same equities as attached to it in the hands of the trustee."

In the case of *Smith* v. *Woodward*, 122 Va. 356, 370, 373, 94 S. E. 916, 920, this is said, speaking of a trustee:

" 'He may divest himself of the legal title without compliance with the conditions of the trust. But a sale and deed, except in strict compliance with the power specified, is of no effect whatever, so far as the trustor's equitable .estate is concerned. If the trustee, in disobedience of the trust conditions, by deed transfer the legal title, his grantee takes only the trustee's interest. He steps into the trustee's shoes, so to speak, and holds subject *to all received rights of the trustor*. Neither courts of law nor courts of equity regard the trustee's deed as absolutely void. Both recognize the fact that it conveys the legal title. The difference is, that the grantee's title or ownership cannot be challenged at law, while equity treats him as a successor to the trust and protects the trustor's estate. Equity does not vacate the trustee's deed and regard the title as remaining in him.' "

    \*    \*    \*    \*    \*

"It is true that the trustee had the power to make a deed to the purchaser in the instant case, in the sense that he was invested with the legal title and could convey that legal title to another, and the grantee would be the owner at law, but *it is not true that the grantee would thereby acquire the beneficial ownership of the land as between him* and the grantor in the trust deed."

It is patent from the last two cases cited, that by

the foreclosure, in the case we are considering, the heirs did not suffer the loss of their interests but that the non-payment of the purchase money left the equities intact.

We are in accord with the contention of the appellant-trustee that the heirs of Sadie A. Sweeley were not injured by some condemnations of small portions of the land while it was held by Edwin S. Sweeley. From the evidence it appears that a considerable portion of the money received by the said Sweeley on account of the condemnation was paid on the principal of the new first deed of trust, which, of course, benefited the heirs. But, whether this were true or not, as is said in the brief of counsel for appellant-trustee, "abundant property remained to represent the equity, or to produce the claim, of the heirs."

We quote again from the brief as a clear exposition of the thought in mind:

"In this connection clarity is again developed by studying the case as if a stranger, B, and not the father of the claimants, had bought the property. The same principles apply but it avoids the confusion incident to the claimants' being both the heirs of Sadie A. Sweeley and the successors to the estate of Edwin S. Sweeley. Despite this tendency to confusion in fact, still, both in law and equity, the heirs of Sadie A. Sweeley can be required to look for satisfaction to the property inherited by them from their father."

As we see it, the decree of the trial court has placed upon the appellant-trustee liability to the heirs of Sadie A. Sweeley in the sum of $3,111.93 and at the same time permits them to retain the property upon the purchase price of which their father's estate is indebted in the same amount. If the appellant-trustee was to be held personally liable for the residue of the purchase price then the court should have required the marshaling of the assets by making the heirs proceed against the property to the exoneration of the trustee, and if there is a conceivable loss it should be borne by the trustee.

But, in our judgment, we do not come to this. The equities and received rights of the trustors are intact. The purchase price was sufficient to cover all claims, legal and equitable. No one has been hurt and under these circumstances it would seem inequitable to place a charge upon the trustee simply because he failed to perform a statutory duty. Such failure cannot be justified and it is not here intended to do so. We condemn the omission, but to leave the property in the hands of the heirs shorn of liability for the unpaid purchase price and charge the trustee with it would be an added wrong to which a court of equity will not lend itself. It is true, and therefore cogent, "that what the claimants have not received from the trustee they have retained in their father's estate."

It is needless to say more. We reverse the decree of the trial court, except in so far as it held that the second and third trusts are still liens, and not divested by the foreclosure. This we affirm, the effect of which is to hold valid and subsisting the claims of Anna M. Sweeley against the property. We remand the case for the entry of a decree acquitting the appellant of liability and to be otherwise in accord with this opinion.

*Reversed in part and affirmed in part and remanded for final decree.*