UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Lorish and White
Argued by videoconference


MARCUS ANDREW BOTTOMS

MEMORANDUM OPINION* BY
v.        Record No. 1132-23-1         JUDGE LISA M. LORISH
SEPTEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
L. Wayne Farmer, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


After a jury trial, the trial court convicted Marcus Andrew Bottoms for aggravated sexual

battery, taking indecent liberties with a child, and abduction with the intent to defile. The trial court

sentenced Bottoms to 70 years of imprisonment with 40 years suspended. On appeal, Bottoms

challenges the sufficiency of the evidence as to the abduction count, a jury instruction, the trial

court's refusal to strike a juror for cause, and the length of his sentence. We affirm the trial court's

judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Bottoms and his wife, Renita, lived together with their 11-year-old daughter, M.B. One evening, some of Renita's family members visited her in the home. During this time, Bottoms was drinking alcohol and became intoxicated. After the guests left, Bottoms told Renita to have M.B. get dressed because they were going out. Bottoms, Renita, and M.B. got into Renita's car with Renita driving, Bottoms in the front passenger seat, and M.B. in the back seat behind Renita.

Bottoms instructed Renita where to drive. Renita did not know where they were going. At one point, Bottoms looked at M.B. in the back seat and told her to remove her clothes. Renita testified that at first "nobody paid him any mind" because he had been drinking. But then Bottoms cursed and repeated the demand "more aggressively." M.B. started crying and removed "her bottoms" because she was scared. Renita was shocked; she did not know what to do. Bottoms removed his pants and climbed into the back seat. Bottoms said that "someone was going to sacrifice."

Renita was afraid of Bottoms and tried to "keep him distracted" by asking where to drive next. With his hands, Bottoms spread M.B.'s legs apart. He licked M.B.'s vagina. In the rearview mirror, Renita saw M.B.'s legs in the air and Bottoms between them. M.B. continued to cry, and Bottoms ordered her to stop crying. At some point, Bottoms said he would stop what he was doing if M.B. hit Renita, and Renita agreed to this. But then Renita testified the situation "flipped" and Bottoms "took [Renita's] side," telling M.B. not to hit Renita.

---

[1] "[W]e review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

Bottoms said he was going to put his penis inside M.B. At the time, Renita was scared of what might happen if she fought against Bottoms; she was concerned that she and M.B. might not survive the incident. Renita saw Bottoms put a condom on his penis, and she pleaded with him not to hurt M.B.

Eventually, Bottoms "got irritated" with M.B.'s crying, returned to the front seat, and told Renita to drive home. Renita stopped the car on the side of the road briefly so that M.B. could get out to urinate. As Renita drove home, Bottoms threatened that when they got there, he "was going to find the biggest knife in the kitchen" and "slit [their] throats."

After they arrived home, Renita and M.B. stayed close to the car while Bottoms approached the house. Once Bottoms got close to the house, Renita and M.B. jumped in the car and went to the police station. Renita and M.B. reported to the police that the child had been sexually assaulted.

The police took M.B. to the hospital for an examination. During the examination, M.B. said that Bottoms put his mouth on her vagina and that he tried to insert his penis, but that it did not go in. Bottoms could not be excluded as the male contributor to DNA material found in the crotch area of M.B.'s underpants after the attack.

ANALYSIS

I. Refusal to Strike Juror 11

Bottoms first assigns error to the trial court's refusal to strike Juror 11 for cause. During voir dire, Juror 11 revealed that a different attorney in the defense counsel's law firm was currently representing her on a driving under the influence charge. Following this admission, the juror said that the arrangement wouldn't affect her ability to be fair to both the Commonwealth and the defense if she were selected to serve on the jury. She was able to be impartial, and she did not feel "any type of pressure" to "vote a certain way" because of her connection to defense counsel's law firm. The juror also affirmed that her experience with the law firm representing both herself and

Bottoms had been positive. Because Juror 11 answered "quickly and very assuredly," without hesitation, the trial court denied the motion to strike for cause, concluding that her voir dire responses revealed no bias. Bottoms argues on appeal that the trial court erred in refusing to strike Juror 11 "automatically" because there is a per se rule dictating that any time a juror is a client of a law firm representing a party to litigation, that juror must be struck regardless of any expressed bias.[2]

"On appellate review, this Court gives deference to a trial court's decision whether to exclude a potential juror for cause." *Roberts v. CSX Transp., Inc.*, 279 Va. 111, 115 (2010). A "trial court's denial of a motion to strike a juror for cause 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Id.* at 116 (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005)). "A trial court must excuse for cause a potential juror who 'has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice' regarding the action." *Id.* (quoting *Spangler v. Ashwell*, 116 Va. 992, 996-97 (1914)). "Although this Court generally disfavors per se rules of juror disqualification 'by reason of [the juror's] status alone,' we have nevertheless established 'limited categories' of per se disqualification." *Id.* (alteration in original) (quoting *Townsend*, 270 Va. at 331). In each circumstance, "the seating of the juror in question was found to be erroneous because the status [the] jurors occupied in relation to counsel or the parties in each case, would so likely erode the citizenry's confidence in the fairness of the judicial system that a new trial was required." *Townsend*, 270 Va. at 331.

Counsel did not argue to the trial court that Juror 11 was subject to per se disqualification specifically, but did focus on the "status" of the juror as the basis for disqualification, rather than

---

[2] Bottoms raises no claim on appeal that the answers Juror 11 provided on voir dire showed that she could not judge the case impartially.

focusing on any expression of bias from the juror during voir dire. Thus we assume, without deciding, that Bottoms preserved for our review whether Juror 11 should have been automatically disqualified based on her status as a client of the same firm representing Bottoms. Bottoms, however, misapplies our prior precedent about the "limited categories" of per se disqualification. *Townsend* points to three prior cases that "effectively" created a category of per se exclusion when the "veniremen at issue were current clients of counsel for a party to the proceedings in each case." *Townsend*, 270 Va. at 331. In each of the three cases, the mere label of "client" was insufficient to require exclusion. Instead, the fact of being a client was paired with other factors about the case and the juror's relationship to the parties to give the juror a "status" that held a strong risk of perceived unfairness requiring disqualification. *Id.* ("[T]he status these jurors occupied in relation to counsel or the parties in each case[] would so likely erode the citizenry's confidence in the fairness of the judicial system that a new trial was required.").

First, in *Cantrell v. Crews*, 259 Va. 47, 51-52 (2000), the Supreme Court found that a would-be juror in a tort case involving medical injuries from a car accident should have been disqualified because she was represented by the same law firm representing the plaintiff in the same type of case—a tort case involving medical injuries the juror sustained in a car accident. Because of this similarity, her promise that she could be unbiased was irrelevant. *Id.* at 51. Instead, the Court concluded that public confidence in the integrity of the process would not be "promoted when a sitting juror is, at the time of trial, a client of the law firm representing one of the parties to the litigation *as a result of a similar occurrence*." *Id.* (emphasis added).

Bottoms also argues that *City of Virginia Beach v. Giant Square Shopping Center Co.*, 255 Va. 467 (1998), and *Medici v. Commonwealth*, 260 Va. 223 (2000), are examples of "automatic" disqualifications. But in *Giant Square*, our Supreme Court found that the trial court

erred in refusing to strike for cause a potential commissioner in an eminent domain proceeding in part because the prospective commissioner was the client of the landowner's counsel, and counsel had previously represented him in a condemnation trial. 255 Va. at 469-71. Thus, both the lawyer-client relationship between the potential commissioner and the landowners' designated counsel and the fact that the litigation involved an almost identical circumstance to that in which counsel represented the commissioner was key to the court's holding. Similarly, in *Medici*, the Court held that a prospective juror in a case involving violent crimes was disqualified from service because her husband had been murdered and the accused was represented by the exact same public defender now representing the defendant. 260 Va. at 231. Finally, we observe that in each of these three cases, the party challenging the disqualification of the juror was the party against whom the juror might be expected to be biased.

The rule set out in *Townsend* is the rule we apply today: an appellate court must hold that a juror should have been per se disqualified, regardless of any promise by the juror that they can be unbiased, when the juror has a "status . . . in relation to counsel or the parties in each case, [that] would so likely erode the citizenry's confidence in the fairness of the judicial system that a new trial" is required. 270 Va. at 331. Here, Juror 11 held the status of being a "client" of a lawyer in same the law firm as the defense counsel, but no other factors suggest that the verdict the jury reached is in any way undermined by Juror 11's positive experience being represented by the same law firm that was representing Bottoms. If anything, her potential bias towards that law firm *increases* the confidence in the verdict. We therefore find that the trial court did not err in refusing to remove her from the panel.

## II. Sufficiency of the Evidence of Abduction

Bottoms challenges the sufficiency of the evidence to sustain his conviction for abduction. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed

correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

A person is guilty of abduction if he, "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . ." Code § 18.2-47(A). Abduction "with the intent to defile such person" is punishable as a Class 2 felony. Code § 18.2-48(ii). "[T]he General Assembly 'did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense.'" *Vay v. Commonwealth*, 67 Va. App. 236, 250 (2017) (quoting *Hoyt v. Commonwealth*, 44 Va. App. 489, 492 (2004)). "Rather, for abduction to be punishable as a separate offense, the detention must be 'separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.'" *Id.* (quoting *Brown v. Commonwealth*, 230 Va. 310, 314 (1985)). Bottoms asserts that "[t]here was no separate and distinct action that amount[ed] to an independent abduction crime in this case."

"[W]hether the detention established by the evidence is 'the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault,' is a question of law to be determined by the court." *Swezey v. Commonwealth*, 77 Va. App. 809, 815 (2023) (alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 229 (2013)). In *Lawlor*, the Supreme

Court of Virginia "reduced the inquiry to a single question: 'The *only* issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense.'" *Id.* at 816 (quoting *Lawlor*, 285 Va. at 225). This Court has found that, "when helpful," the "*Hoyt* factors may be considered" in determining whether detention was incidental to another crime. *Id.* at 817. These factors are:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Hoyt*, 44 Va. App. at 494 (quoting *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)).

The evidence was sufficient to prove that Bottoms' detention of M.B. for an illicit purpose exceeded the minimum necessary to complete the offenses that he committed against the child while in the back seat of the car. While intoxicated and belligerent, Bottoms forced Renita and M.B. to leave the safe surroundings of their home, enter Renita's car, and drive around at his direction. Bottoms thus held M.B., an 11-year-old child, subject to his whim, while ordering Renita where to drive. From her position in the driver's seat, Renita was restricted in her ability to intervene and prevent Bottoms from sexually assaulting M.B. in the back seat. Even apart from his sexual attack on M.B., Bottoms continued to threaten M.B. and Renita, and both were afraid of what would happen if they did not comply with his demands. The ordeal ended only when Bottoms instructed Renita to drive them home and Bottoms got out of the car, and Renita and M.B. were able to flee to the police station. Thus, we find that the evidence proved that Bottoms detained M.B. in excess of what was required for proof of the other convictions, and we do not disturb the verdict.

III.  Jury Instruction on Indecent Liberties

Bottoms argues that the trial court erred by including a phrase mentioning "sodomy" in Instruction 14, which defined the elements of the indecent liberties charge.  "As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 264 (2018)).  "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion."  *Id.* (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)).  "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."  *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

Bottoms' indictment for taking indecent liberties with M.B. charged that Bottoms proposed that she "feel or fondle his sexual or genital parts," that she "engage in sexual intercourse or sodomy," that she "expose her genital parts," that he exposed his "sexual or genital parts" to her, or sexually abused her.  Instruction 14, which defined the elements of indecent liberties, stated that the Commonwealth was required to prove that Bottoms "knowingly and intentionally exposed his sexual or genital parts to [M.B.], or propose[d] that [M.B.] engage in sexual intercourse or sodomy, or propose[d] that [M.B.] expose her genital parts, or sexually abuse[d] [M.B.] who was at the time under the age of 18[.]"  Bottoms objected to the portion of the instruction that required the Commonwealth to prove that Bottoms proposed that M.B. engage in sodomy, contending that there was not a "scintilla of evidence showing sodomy."  The trial court overruled the objection, noting that the lack of proof of sodomy was fair comment for closing argument but that the language was consistent with the indictment.

According to Code § 18.2-370.1(A), an adult in a custodial relationship with a child commits the crime of taking indecent liberties by proposing that the child engage in sodomy or other sexual acts. The language of Bottoms' indictment for taking indecent liberties indicated that the offense could occur by Bottoms proposing that M.B. engage in sodomy, which is consistent with Instruction 14.

Even if we were to assume that the inclusion of the phrase containing the word "sodomy" should have been excluded from Instruction 14, we must consider whether such an error would be harmless. *Conley v. Commonwealth*, 74 Va. App. 658, 684 (2022) ("The United States Supreme Court has repeatedly stated that harmless error analysis is appropriate in the context of improper jury instructions." (quoting *Kil v. Commonwealth*, 12 Va. App. 802, 812 (1991))). "Thus, '[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed.'" *Id.* (alteration in original) (quoting *Kil*, 12 Va. App. at 812).

The evidence shows that Bottoms removed his pants before climbing into the back seat of the car with M.B., thus exposing his genitalia to her. He ordered her to remove her pants, and she complied. Bottoms pushed her legs apart, exposing her genital area. Bottoms said that he was going to have sexual intercourse with M.B., and she saw him put a condom on his penis. Thus, regardless of whether there was evidence that Bottoms proposed that M.B. commit sodomy, his guilt of violating Code § 18.2-370.1 was overwhelming, and we find no reason to disturb the verdict.

IV.  Sentencing

Bottoms contends that the trial court abused its discretion in imposing his sentence, claiming that the court "inappropriately weighed [his] decision to have a trial in this case." He also claims that the trial court did not properly weigh the evidence that would mitigate his sentence.

At the sentencing hearing, Bottoms' sister, Carlicea Mitchell, testified that the conduct for which he was charged was "very out of character for him." Bottoms maintained employment, supported his three children, and had a good relationship with them. Mitchell described Bottoms as a "role model" and helpful in every way. Bottoms' other sister, Yasmine Bottoms, described their relationship and his closeness with his family. She, too, was surprised by Bottoms' charges and described him as a helpful person. Bottoms' uncle said that Bottoms had a good reputation for helpfulness. In her victim impact statement, Renita noted that Bottoms was not a "horrible person," that he had been involved in M.B.'s life, and that he loves his family. In allocution, Bottoms apologized to the court and to his family.

The trial court noted Bottoms' lengthy criminal record and his "history of putting [his] hands on people and harming them." The trial court stated that notwithstanding the evidence that he was a good person, he was not "there" for M.B. on the date of the offense, that the conduct was egregious, and it was "unforgiveable" to require her to take the stand at trial and explain what happened to her. The trial court imposed a sentence of 70 years with 40 years suspended.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (alteration in original) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "This is the extent of our substantive sentencing review '[a]bsent an alleged statutory or constitutional violation.'" *Taylor v. Commonwealth*, 77 Va. App. 149, 176-77 (2023) (quoting *Minh Duy Du*, 292 Va. at 563).

How much weight to give to mitigating factors presented by the defendant is within the trial court's discretion. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Absent a

statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). "Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

The sentences the trial court imposed were within the ranges set by the legislature. *See* Code §§ 18.2-48, -67.3(A)(1), -370.1. It was within the trial court's purview to consider any mitigating factors in determining Bottoms' sentence, such as his positive relationships with family members and others. *See Keselica*, 34 Va. App. at 36. Weighing against Bottoms' mitigating evidence were his significant criminal history and the egregious nature of his crimes against his daughter. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 98-99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Bottoms' sentences were within the statutory ranges, and he does not allege a "statutory or constitutional violation," so "our task is complete." *See id.* at 99.

In addition, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)); *see also Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting an Eighth Amendment challenge to a 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*