UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and O'Brien

JANAY CHANEL COOKE

v.      Record No. 0763-18-1

CITY OF NEWPORT NEWS DEPARTMENT
 OF HUMAN SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 5, 2019

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

(Charles E. Haden, on brief), for appellant.

(Christopher M. Midgley, Assistant City Attorney; Rachel E.
Madden, Guardian *ad litem* for the minor children, on brief), for
appellee.


Janay Chanel Cooke (mother) appeals the permanency planning orders with the goal of

relative placement for her four children. Mother argues that the circuit court erred by (1) denying

her motion to transfer the proceedings to a tribal court under the Indian Child Welfare Act (ICWA)

and (2) approving the goal of relative placement because the City of Newport News Department of

Human Services (the Department) failed to prove that the goal was in the best interests of the

children and that reasonable efforts had been made to reunite the children with mother. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Mother is the biological mother to four children, who are the subject of this appeal.[2] On December 18, 2015, the Newport News police stopped mother because she was driving without headlights. The police found mother's four children, all under the age of six, unrestrained in the car. Three of the children sat in the front seat, and the fourth child was in the back seat. The police gave mother a breathalyzer test and determined that she had exceeded the alcohol limit by three times. She also failed the field sobriety test. Mother subsequently was convicted of felony child neglect and driving while intoxicated, first offense.

Child Protective Services (CPS) and the maternal grandmother developed a safety plan for the children, so that the maternal grandmother became the children's primary caregiver and supervised mother's contact with the children. At a family partnership meeting on January 21, 2016, the Department required mother to participate in mental health and substance abuse treatment, Healthy Families, a parenting class, and a GED program. The Department provided monitoring and supportive services. After the family partnership meeting, mother and the

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has two other children, who are not subject to this appeal and are in the custody of their fathers.

maternal grandmother had a domestic dispute, which required police intervention. Mother left the house with the children, which violated the safety plan. The maternal grandmother failed to notify the Department of the incident. The Department sought emergency custody of the children because the relationship between mother and the maternal grandmother was volatile, the safety plan had been violated, and mother had ongoing mental health and substance abuse issues. On February 1, 2016, the City of Newport News Juvenile and Domestic Relations District Court (the JDR court) entered emergency removal orders for three of the children.[3] On February 5, 2016, the JDR court entered preliminary removal orders for the three children and adjudicated that they were abused or neglected.

The Department arranged for mother to visit with the children. The Department also arranged for the father of the two younger children to have unsupervised visitations with his children, beginning in March 2016.[4] The father's visitations progressed to day visitations in June 2016, and then overnight visitations in December 2016. The Department also arranged for the maternal uncle to visit with the two older children. On January 13, 2017, the Department placed the two older children with their maternal uncle and the two younger children with their father. The Department then reduced mother's visits from weekly to biweekly to monthly, so the children could become acclimated to their new homes. At a visitation on January 5, 2017, mother told the children that they were not coming home with her because "y'all do not know how to act."

---

[3] The Department placed the fourth child with that child's paternal grandmother; however, the Department subsequently learned that the child had been living with the father, in violation of a safety plan. The Department sought emergency custody of the child. On April 11, 2016, the JDR court entered an emergency removal order and preliminary removal order for the child and adjudicated that the child was abused or neglected.

[4] A paternity test confirmed that the two younger children have the same biological father. The two older children do not have the same biological father as the two younger children.

The Department referred mother to numerous services, including co-parenting counseling. From March 10, 2016 until February 14, 2017, mother participated in Structural Family Counseling. Mother stopped participating in the counseling because she did not want to participate in co-parenting sessions with the father of the two younger children. The therapist believed that mother and the younger children's father were going to become physically violent with one another.

The Department also provided intensive reunification services and a family engagement specialist. However, mother had "been difficult to engage since the last court hearing on November 28, 2016 when the [interim plan's] goal of Relative Placement was approved."

On March 23, 2017, the Department prepared petitions for a permanency planning hearing with the goal of relative placement for all four children. On May 9, 2017, the JDR court entered orders approving the goal of relative placement for the children and transferring custody of the two older children to the maternal uncle and the two younger children to their father. Mother appealed to the circuit court.

On December 1, 2017, the parties appeared before the circuit court on mother's motion to transfer the proceeding to a tribal court under ICWA.[5] Mother, appearing *pro se*, asserted, for the first time, that she and the children were members of the Yamassee Nation. The circuit court found that the Yamassee Nation was not a federally recognized tribe, so ICWA did not apply.

On January 8, 2018, the parties appeared before the circuit court on the appeal of the JDR court's permanency planning orders.[6] Mother again chose to appear *pro se*. The maternal uncle testified that although he thought mother "was trying," she "needed help." The circuit court

---

[5] A transcript of the December 1, 2017 hearing was not timely filed and, thus, is not a part of the record. Rule 5A:8.

[6] A transcript of the January 8, 2018 hearing was not timely filed and, thus, is not a part of the record. Rule 5A:8.

found that mother "had been given a list of things to do and had worked her way through the list," but "there appears to still be a lack of recognition of the seriousness of the situation in which she had placed herself and her children originally." Mother did not demonstrate that she understood and was willing to implement what she had learned from the services that had been provided to her. The circuit court further found that the children were doing well with their father and the maternal uncle, respectively, who each provided "stable and safe" living environments for the children, maintained contact with the Department, and met the children's needs. The circuit court held that it could not "conclude by a preponderance of the evidence that it would be in the best interest of the children to return to their mother."

On January 11, 2018, the circuit court issued its "Decision and Order" and an addendum, and it entered the permanency planning orders approving the goal of relative placement for the children. The circuit court transferred custody of the two older children to the maternal uncle and the two younger children to their father. This appeal followed.

ANALYSIS

*Motion to Strike*

On December 20, 2018, the Department filed a motion to strike certain transcripts designated by mother for the appendix. The Department argues that under Rule 5A:8, the record does not include the transcripts from the December 1, 2017 and January 8, 2018 hearings because both transcripts were filed late on July 23, 2018. The Department also asserts that these transcripts are indispensable to a review of mother's assignments of error.

Under Rule 5A:8(a), "[t]he transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment." The court entered the final orders on January 11, 2018, but appellant did not file the transcripts

until July 23, 2018.  Therefore, the transcripts were filed late and are not part of the record.  Rule 5A:8.  The motion to strike the transcripts from the appendix is granted.

We now must consider whether the transcripts are indispensable to a determination of the assignments of error raised on appeal.  See Bay v. Commonwealth, 60 Va. App. 520, 528-29 (2012); Anderson v. Commonwealth, 13 Va. App. 506, 508-09 (1992).  The record before this Court includes the circuit court's decision and order, as well as the court's addendum and the parties' trial exhibits.  Contrary to the Department's arguments, we find that these documents are sufficient, and the transcripts are not necessary, for us to review mother's assignments of error.

*Indian Child Welfare Act*

Mother argues that the circuit court erred by denying her motion to transfer the proceedings to a tribal court.  Mother asserted for the first time at the December 1, 2017 hearing that she and the children were from the Yamassee Nation and that ICWA applied.

On February 22, 2016, the Department received copies of the children's birth certificates. None of these birth certificates reflected the mother's race.  In 2017, mother obtained amended birth certificates, which indicated that mother's race was "American Indian or Alaska Native Tribe(s)."  Mother claimed that she was a member of Yamassee Indian tribe, but the circuit court had "no way of knowing what actual requirements the 'Yamassee Indian Tribe' require[d] for membership."  It did, however, determine that application for membership to the Yamassee Indian Tribe was available on the internet.  The circuit court took judicial notice that the Federal Register list of federally recognized tribes did not include the Yamassee Indians, as of January 17, 2017.  Since the Yamassee tribe was not a federally recognized tribe, the circuit court held that ICWA did not apply.

Congress enacted ICWA in 1978 to address "a crisis in which 'an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children

- 6 -

from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." Geouge v. Traylor, 68 Va. App. 343, 360-61 (2017) (quoting 25 U.S.C. § 1901(4)). ICWA established "a number of procedural protections for cases involving Indian children." Id. at 361 (quoting Thompson v. Fairfax Cty. Dep't of Family Servs., 62 Va. App. 350, 363 (2013)). ICWA defined an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." Id. (quoting 25 U.S.C. § 1903(4)). ICWA is "limited to those Indian tribes that are federally recognized." Id.; see 25 U.S.C. § 1903(3) & (8).

Mother had the burden of proving that ICWA applied to her case. Geouge, 68 Va. App. at 363. Although she introduced into evidence a copy of her Yamassee Tribe Native American Identification Card, she did not prove that the Yamassee Indian tribe was federally recognized. By taking judicial notice of the federally recognized Indian tribes, the circuit court knew that an Indian child, as defined by ICWA, was not involved in this case, and therefore, it correctly held that ICWA did not apply. See id. at 364. Thus, the circuit court did not err in denying mother's motion to transfer the case to a tribal court.

*Relative Placement*

Mother also argues that the circuit court erred by approving the foster care plan of relative placement. She asserts that the Department made little effort to reunite her with her children, especially between May 2017 and January 2018. She further contends that changing the goal from "return home" to "relative placement" was not in the children's best interests.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018)

(quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)). "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations . . . ." Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 79 (2014) (quoting Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240 (2006)).

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)).

The Department provided numerous services to mother, including intensive reunification services, visitation, referral to Structural Family Therapy for co-parenting, participation in family partnership meetings, and regular communication with the social worker about the children. Notwithstanding the numerous services the Department provided over an extended period, mother was "difficult to engage" and "declined to participate in the co-parenting sessions." The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130. The circuit court found that the Department had made reasonable efforts to reunite the children with mother, and the record before us supports this finding.

Mother specifically challenges the lack of services offered between May 2017 and January 2018. However, the JDR court entered its permanency planning orders on May 9, 2017, and at that time, transferred custody of the two younger children to their father and the two older children to the maternal uncle. Although mother appealed the JDR court orders, Code § 16.1-298(A) provides that the JDR court orders remain in place pending the appeal.[7] Therefore, the Department was not required to offer additional services to mother after the JDR court transferred custody of the children.

Mother also argues that the goal of relative placement was not in the children's best interests. "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

The Department presented evidence that the children were doing very well in their placements, and the circuit court found that they were thriving. At the time of the circuit court hearing, the children had been in foster care for approximately two years. Mother had a history of substance abuse, but apparently had been drug and alcohol free since late 2015. She had not, however, resolved her housing situation and proven that she had suitable housing for the

---

[7] Code § 16.1-298(A) states:

> Except as provided herein, a petition for or the pendency of an
> appeal or writ of error shall not suspend any judgment, order or
> decree of the juvenile court nor operate to discharge any child
> concerned or involved in the case from the custody of the court or
> other person, institution or agency to which the child has been
> committed unless so ordered by the judge of the juvenile court, the
> judge of a circuit court or directed in a writ of supersedeas by the
> Court of Appeals or the Supreme Court or a judge or justice
> thereof.

children.  The circuit court found that "the issues that resulted in [mother] being convicted of felony child neglect and abuse and the danger represented by her behavior to her children" had not been resolved.  Although she completed numerous services the Department required, the circuit court found that mother still did not recognize "the seriousness of the situation in which she had placed herself and her children originally."  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).  Based on the circumstances, the circuit court did not err in finding that it was in the children's best interests to approve the foster care plan goals of relative placement and transfer custody of the two youngest children to their father and the two older children to their maternal uncle.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.