COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


PHILLIP C. BAY, S/K/A
  PHILIP C. BAY

                                                                OPINION BY
v.        Record No. 0585-11-1              JUDGE ROBERT P. FRANK
                                                                AUGUST 7, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge[1]

James O. Broccoletti (Zoby, Broccoletti & Normile, P.C., on brief),
for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Phillip C. Bay, appellant, was convicted of eleven counts of manufacturing or possession

of a fire bomb or explosive device with intent to manufacture, in violation of Code § 18.2-85,

possession of a weapon of terrorism with intent to terrorize, in violation of Code § 18.2-46.6, two

counts of acts of terrorism, in violation of Code § 18.2-46.5, two counts of soliciting or recruiting

another for acts of terrorism, in violation of Code § 18.2-46.5, and two counts of possession or

use of a sawed-off shotgun or rifle, in violation of Code § 18.2-300.  On appeal, he contends the

trial court erred in denying his motion for a change of venue, because all the citizens of Virginia

Beach, as the victims of the alleged crimes, were presumptively prejudiced and incapable of

serving as impartial jurors.  He also alleged the trial court erred in denying his motion to

suppress, because police lacked valid consent to search his residence, and because the affidavit

---

[1] While Judge Edward W. Hanson, Jr. ruled on the motion to suppress and the motion for
a change of venue, Judge O'Brien presided over the jury trial and sentencing hearing.

was insufficient to justify a second, more expansive search of the residence.  For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

On April 5, 2009, Investigator Donald Moss of the Virginia Beach Fire Department received information that appellant was making pipe bombs at his home and was planning a Columbine-type attack on a local high school.[2]  Based on that information, Moss went to appellant's home in Virginia Beach, joining several police officers already at the scene.  Moss met appellant's mother and told her why he was at the home.  Moss asked Mrs. Bay if officers could interview her son, who was seventeen at the time.  She gave permission, and the officers went inside the home with her.

Moss, Mrs. Bay, and appellant went into the kitchen/dining room area.  Moss questioned appellant about the alleged pipe bombs, and appellant admitted that he had made some pipe bombs.  Appellant also said he had been doing some experimentation and blew up some pipe bombs in the woods near his home.  Later in the interview, Moss asked if there were "any other things" in the house.  Appellant stated that he had a container of sulphur and possibly red cannon fuse in his room.

After this discussion, Moss asked Mrs. Bay if he could search appellant's room for these items and retrieve these items, and to determine if there was anything else that would be dangerous.  Appellant interjected, "Mom, just say no."  When Mrs. Bay asked why, appellant responded that he would tell her later.  The two continued in a loud and heated exchange.  Moss

---

[2] Columbine High School in Colorado was the scene of a shooting in 1999, in which two students shot and killed thirteen people and then killed themselves.  Greg Toppo, 10 years later, the real story behind Columbine (Apr. 14, 2009), http://www.usatoday.com/news/nation/2009-04-13-columbine-myths_N.htm.

told Mrs. Bay that he at least wanted to retrieve the two items appellant mentioned. Mrs. Bay told Moss to do what he had to do, as long as the areas he searched were agreeable to appellant.

Appellant then agreed and said to Moss, "come on up to my room and I will give you the sulphur and fuse." For safety reasons, Moss accompanied appellant to his room, along with Officers Martinez and Binder. The officers recovered the red cannon fuse from appellant's closet. The sulphur container was on top of a piano in appellant's room. As Moss recovered the sulphur, he looked down and saw a plastic case under appellant's bed. Moss was not sure if it was a gun case. He asked appellant what was in the case. Appellant then quickly flipped up his mattress, revealing a six-inch pipe. Appellant said he forgot it was there. Moss retrieved the pipe. As Moss turned to leave the room, he saw three or four clear plastic, stackable drawers. In one of the drawers, Moss could see two nipples and a container marked Pyrodex.[3] Moss asked appellant about it, and appellant said it was his "stuff" with which he experimented. Moss observed other containers labeled shot shrapnel, shredded glass, and BBs. There was also a bag containing a white substance. Appellant said it was soap, which Moss knew could be used to make napalm.

The officers and appellant took the drawer downstairs. Moss asked Mrs. Bay if he could take the drawer outside for safety reasons. Mrs. Bay consented but said she wanted her drawer back. Moss took the drawer to his car, put the contents in his trunk, and returned the drawer to Mrs. Bay.[4] Moss told Mrs. Bay he would get back to her later. At point, Moss wanted to get a second opinion on the items he had taken from the house.

---

[3] Pyrodex® is a propellant designed for use in muzzleloading and black powder cartridge arms. See http://www.hodgdon.com/pyrodex.html (last visited July 9, 2012).

[4] When Moss came inside, either appellant or Mrs. Bay asked him if he wanted to search the shed. That search produced nothing of value.

Moss called Investigator Newton to review the items recovered from appellant's house. Newton is highly trained in the subject of pipe bombs and other explosives. Moss and Newton met the next morning, and Newton determined that there was enough to charge appellant with manufacturing and possession of explosive devices.

Also that morning, Newton learned from Virginia Beach Police Detective Frederick that an informant reported appellant had eighteen additional pipe bombs hidden in his attic. Newton executed an affidavit and received a search warrant for appellant's house. Newton executed the search warrant that day and found more fire bombs and explosive devices. When questioned, appellant admitted that he had constructed the devices. Appellant also stated that he and another juvenile were planning an attack on Landstown High School and that they were going to use the devices to kill large numbers of people.

This appeal follows.

ANALYSIS

Change of Venue

Appellant contends the trial court erred in denying his motion for a change of venue. The Commonwealth initially alleges that appellant has failed to provide an adequate record. We disagree with the Commonwealth.

On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by appellant. Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256 (1961). If appellant fails to do so, the judgment will be affirmed. Id.

Rule 5A:8 provides that the transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment. In lieu of or to supplement a transcript, a party may submit a written statement of facts that has

been presented to and signed by the trial judge and filed by the clerk of the trial court in accordance with Rule 5A:8(c).

> If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to. This Court has no authority to make exceptions to the filing requirements set out in the Rules.

Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986); see Anderson v. Commonwealth, 13 Va. App. 506, 508-09, 413 S.E.2d 75, 77 (1992) (addressing statements of facts in lieu of a transcript).

"When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii). Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review. See Turner, 2 Va. App. at 99, 341 S.E.2d at 402 ("If *we* determine that the transcript [or statement of facts] is indispensable . . . , we *must* [conclude] that the record on appeal is insufficient to fairly and accurately determine the issues presented." (emphases added)).

In this case, appellant timely filed the transcript from the January 6, 2010 pretrial hearing, at which he argued his motion to suppress and for a change of venue. Appellant did not file a transcript or written statement of facts from the trial of November 22, 2010.

From the record available to us, it is evident that at the pretrial hearing, the trial court denied appellant's motion to suppress. However, the trial court did not rule on appellant's motion for a change of venue. Rather, the trial court found the motion premature, concluding that "[w]hoever tries the case – whichever judge tries the case will have to determine after voir dire whether or not it's possible for both sides to get a fair and impartial trial in this city." The trial court clearly acted within its discretion, as "'[a] court may refuse to summon a jury from

another county until an ineffectual effort has been made to obtain an impartial jury from the county in which the trial is to take place.'" Ascher v. Commonwealth, 12 Va. App. 1105, 1114, 408 S.E.2d 906, 912 (1991) (quoting Coppola v. Commonwealth, 220 Va. 243, 248, 257 S.E.2d 797, 801 (1979)).

However, we find the transcript of the November 22, 2010 trial is not indispensable to resolving this issue. Appellant argued below, as he does now, that all residents of Virginia Beach are disqualified *per se* to sit on the jury, thus entitling him to a change in venue. Thus, the *voir dire* conducted on November 22, 2010 is not relevant to a *per se* disqualification.[5] It is evident from the record that the trial court did not change venue nor find every Virginia Beach resident to be disqualified. Therefore, we will address the merits of this issue.

> "An accused has a fundamental right to a trial by an impartial jury. U.S. Const. amends. VI and XIV; Va. Const. Art. I, § 8." Barker v. Commonwealth, 230 Va. 370, 374, 337 S.E.2d 729, 732 (1985); see also Martin v. Commonwealth, 221 Va. 436, 444, 271 S.E.2d 123, 128 (1980). It is the trial judge's duty to empanel jurors who are free from bias and prejudice against the parties. Scott v. Commonwealth, 1 Va. App. 447, 451, 339 S.E.2d 899, 901 (1986). The trial judge's fulfillment of this duty involves the exercise of sound judicial discretion, which ordinarily is binding on appeal absent manifest error. Calhoun v. Commonwealth, 226 Va. 256, 258-59, 307 S.E.2d 896, 898 (1983).

Wilson v. Commonwealth, 2 Va. App. 134, 137, 342 S.E.2d 65, 67 (1986).

"'It is presumed that a defendant can receive a fair trial in the locality where the offense occurred, and the burden is on the accused to overcome the presumption by clearly demonstrating widespread prejudice against him.'" Brown v. Commonwealth, 28 Va. App. 315, 336, 504 S.E.2d 399, 409 (1998) (quoting LaVasseur v. Commonwealth, 225 Va. 564, 577, 304 S.E.2d 644, 651 (1983)). "The trial court's decision whether to grant a motion for change of

---

[5] We note that appellant does not claim any proven bias or prejudice by any of the veniremen because of their responses to *voir dire*. His challenge is to each venireman's status as a resident of Virginia Beach.

venue is reviewed for an abuse of discretion." Cressel v. Commonwealth, 32 Va. App. 744, 753, 531 S.E.2d 1, 8 (2000).

Appellant refers to the definition of terrorism to further his disqualification argument. Code § 18.2-46.4 defines terrorism:

> "Act of terrorism" means an act of violence as defined in clause (i) of subdivision A of § 19.2-297.1 committed with the intent to (i) intimidate the civilian population at large; or (ii) influence the conduct or activities of the government of the United States, a state or locality through intimidation.

Thus, he contends that because each resident of Virginia Beach is a part of the "civilian population at large," the entire population of Virginia Beach could be appellant's potential victims. Appellant cites Jaques v. Commonwealth, 51 Va. (10 Gratt.) 690, 693 (1853), for the proposition that *per se* disqualification is appropriate when a venireman stands in a near legal relationship to the victim.

A trial court must excuse for cause a potential juror who "'has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice'" regarding the action. Spangler v. Ashwell, 116 Va. 992, 996-97, 83 S.E. 930, 931 (1914) (quoting Richardson v. Planters Bank of Farmville, 94 Va. 130, 134, 26 S.E. 413, 414 (1896)). However, "*per se* rules of disqualification which are based on 'a presumption of [juror] bias or prejudice,' are disfavored in Virginia." McGann v. Commonwealth, 15 Va. App. 448, 454, 424 S.E.2d 706, 710 (1992) (quoting Scott v. Commonwealth, 1 Va. App. 447, 452, 339 S.E.2d 899, 901 (1986)).

There is no *per se* disqualification rule for a prospective juror related to a prosecution witness, Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001), a current or past acquaintance between a juror and a prosecution witness, Perez v. Commonwealth, 40 Va. App. 648, 656, 580 S.E.2d 507, 511 (2003), or an association with a law enforcement

officer, <u>Clozza v. Commonwealth</u>, 228 Va. 124, 135, 321 S.E.2d 273, 280 (1984). Further, there is no *per se* disqualification for former clients of the Commonwealth's Attorney, <u>Elam v. Commonwealth</u>, 229 Va. 113, 116, 326 S.E.2d 685, 687 (1985), one employed by a corporate victim, <u>Scott v. Commonwealth</u>, 1 Va. App. 447, 452, 339 S.E.2d 899, 902 (1986), one who has been a victim of a like crime, <u>Webb v. Commonwealth</u>, 11 Va. App. 220, 223, 397 S.E.2d 539, 541 (1990), or one shares the risk of being a victim of the same crime because of having similar financial interest as the victim in the case being tried, <u>Melvin v. Commonwealth</u>, 202 Va. 511, 512-13, 118 S.E.2d 679, 680 (1961).

However, there are limited instances where the status of a prospective juror creates a *per se* disqualification. In <u>Townsend v. Commonwealth</u>, 270 Va. 325, 619 S.E.2d 71 (2005), the Supreme Court of Virginia opined that *per se* disqualification applied when a venireman was a current client of counsel, <u>id.</u> at 331, 619 S.E.2d at 74-75 (citing <u>Cantrell v. Crews</u>, 259 Va. 47, 49, 523 S.E.2d 502, 503 (2000); <u>City of Virginia Beach v. Giant Square Shopping Ctr. Co.</u>, 255 Va. 467, 470-71, 498 S.E.2d 917, 918-19 (1998); <u>Medici v. Commonwealth</u>, 260 Va. 223, 226-27, 532 S.E.2d 28, 30-31 (2000)), or when a venireman's brother, a police officer, would testify as to the crime scene, <u>id.</u> (citing <u>Barrett</u>, 262 Va. at 826-27, 553 S.E.2d at 732).

The Supreme Court of Virginia has also found that a stockholder in a company which is a party to the litigation would be automatically disqualified from serving as a juror, <u>see</u> <u>Salina v. Commonwealth</u>, 217 Va. 92, 93-94, 225 S.E.2d 199, 200 (1976), as would a venireman who is related within the ninth degree of affinity to the victim, <u>see</u> <u>Gray v. Commonwealth</u>, 226 Va. 591, 593, 311 S.E.2d 409, 410 (1984).

The rationale of a *per se* disqualification is that the prospective juror's status alone renders that juror incapable of being fair and impartial. See McGann, 15 Va. App. at 454, 424 S.E.2d at 710.[6]

Code § 18.2-46.8 states: "Venue for any violation of this article may be had in the county or city where such crime is alleged to have occurred or where any act in furtherance of an act prohibited by this article was committed." The indictments charging appellant with numerous acts of terrorism all fall within Article 2.2, Code §§ 18.2-46.4 through 18.2-46.10.[7]

It should be noted that in his motion to change venue, appellant asked only that venue be transferred to another jurisdiction. He did not ask that a jury panel be brought in from another jurisdiction.

Thus, under the narrow facts of appellant's motion in this case, Code § 18.2-46.8 expresses the legislature's intent that it is appropriate to have terrorism charges tried in the county or city where the offense occurred, despite the fact that the acts of terrorism must be accompanied by an intent to intimidate the civilian population. Had the legislature intended to require a change of venue in a terrorism case, it certainly could have written the statute to reflect that intent. Basic principles of statutory construction hold that "when a statute is plain and unambiguous, a court may look only to the words of the statute to determine its meaning." Caprio v. Commonwealth, 254 Va. 507, 511-12, 493 S.E.2d 371, 374 (1997).

---

[6] The Supreme Court of Virginia has acknowledged that a *per se* disqualification may arise in order to maintain public confidence in the judicial system. While neither party raised this concept, we discern no reason to believe that disqualifying the entire population of Virginia Beach from sitting on this jury would maintain public confidence. See Townsend, 270 Va. at 332, 619 S.E.2d at 75.

[7] Appellant does not base his disqualification argument on the non-terrorism indictments.

Further, the status of being a resident of Virginia Beach, even as a member of the civilian population at-large, does not necessarily mean that such status prevents any and every resident of Virginia Beach from being fair and impartial.

Appellant's argument would lead to a result that impacts the efficient administration of justice if a court was required to change venue for every terrorism charge under Article 2.2. We acknowledge that some residents of Virginia Beach may not be impartial. The proper method to insure an impartial jury would be to address this issue on *voir dire*, which the trial court did in this case. We therefore conclude the trial court did not err in declining appellant's motion to change venue.[8]

Motion to Suppress[9]

Appellant next contends that the trial court erred in denying his motion to suppress evidence. He argues that police and fire investigators did not have valid consent for the April 5, 2009 search of his residence. He also argues that the April 6, 2009 search was invalid, because the supporting affidavit did not provide sufficient new facts to justify a warrant for a second, more extensive search. Appellant contends there was no new probable cause from the previous

---

[8] At oral argument, appellant conceded that his change of venue argument rises or falls on the resolution of whether all residents of Virginia Beach should be disqualified.

[9] Again, the Commonwealth contends appellant failed to provide an adequate record to permit us to review his challenge to the denial of his suppression motion. Although the record contains the transcript of the suppression hearing, the trial transcript is not part of the record on appeal. When an appellate court reviews a suppression ruling, it considers all relevant evidence adduced at both the suppression hearing and the trial. E.g., DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987). This is so even in a case challenging the sufficiency of an affidavit supporting the issuance of a search warrant. See, e.g., Adams v. Commonwealth, 275 Va. 260, 270-71, 657 S.E.2d 87, 93 (2008) (holding a reviewing court is not limited to the four corners of the affidavit and should consider the totality of the circumstances, including any sworn oral testimony presented to the issuing magistrate). Here, because we hold *infra* in the text that the evidence admitted at the suppression hearing supports the trial court's ruling and because appellant does not rely on any evidence introduced at trial as supporting his argument for a reversal, we reach the merits of his challenges to the suppression ruling and affirm.

day.  Essentially, appellant argues that because police conducted a full and complete search on the first day, the affidavit provided no new information that additional items would be found with the warrant for a second search.  He further alleges that the affidavit contained no information as to the reliability or basis of knowledge of the informant.

> "A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal.  In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.  The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error."

Brooks v. Commonwealth, 282 Va. 90, 94-95, 712 S.E.2d 464, 466 (2011) (quoting Jones v. Commonwealth, 277 Va. 171, 177-78, 670 S.E.2d 727, 731 (2009) (internal citations omitted)).

Furthermore, conflicts in evidence present factual questions, to be resolved by the trial court.  Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992).

"The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and 'voluntariness is a question of fact to be determined from all the circumstances.'"  Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)).  Appellant argues that the search of his bedroom was illegal because his consent was coerced.  However, his allegation is unsupported by evidence in the record.

The trial court found that the search and seizure of the items in appellant's room was consensual.  Unless this finding was "clear error," we will not reverse the trial court's conclusion.  An appellate court "'should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'"  Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

In this case, Investigator Moss testified that he explained to appellant's mother, Mrs. Bay, why he was at the residence. Mrs. Bay invited Moss and other officers into her home. Moss further testified that while in the kitchen area, appellant admitted that he had explosive materials in the house and that he had blown up some pipe bombs in the woods near his home. When Moss asked Mrs. Bay for permission to search appellant's room, appellant told his mother to refuse. After a heated discussion between appellant and his mother, Moss asked Mrs. Bay if they could at least retrieve the items appellant had admitted to having, in the interest of safety. Mrs. Bay told Moss to do what he had to do. Appellant agreed to the search and then took the officers to his room, where he willingly turned over contraband.

Both appellant and his mother consented to the search of appellant's room, and the only evidence of coercion came from appellant's unsupported assertion that officers repeatedly asked Mrs. Bay for consent to search after she had declined. As the trial court properly concluded, the testimony of the officers, viewed in the light most favorable to the Commonwealth, clearly and unequivocally established that Mrs. Bay was always cooperative with officers. After the police spoke with Mrs. Bay and Mrs. Bay spoke with appellant, Mrs. Bay voiced her consent, and appellant voluntarily took officers to his room.

Appellant premises his argument on his unsubstantiated claim that officers put pressure on Mrs. Bay by making repeated requests for consent. There is no evidence of this in the record. Mrs. Bay testified she did not consent to the search. However, the trial court specifically declined to credit Mrs. Bay's testimony, saying it could "best be termed as selective recall." We cannot say that the trial court was plainly wrong in doing so. "On appeal, great deference is given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Young v. Commonwealth, 275 Va. 587, 590, 659 S.E.2d 308, 310 (2008). We will not disturb the trial court's judgment with regard to factual matters unless

plainly wrong or without evidence to support it.  Id.  Instead, we "'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  Blow v. Commonwealth, 52 Va. App. 533, 536, 665 S.E.2d 254, 256 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

We conclude that the trial court correctly ruled that the search of appellant's room and the seizure of items found therein was consensual.

Appellant also contends that the trial court should have granted his motion to suppress, because there was no new probable cause for issuance of the April 6, 2009 search warrant. Appellant argues the supporting affidavit contained insufficient facts to find probable cause to search appellant's residence a second time.  He also alleges the affidavit contained no information as to the reliability or basis of knowledge of the informant.

"[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  In determining whether an affidavit was sufficient to support a search warrant, we look to the totality of the circumstances.  Garza v. Commonwealth, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984) (citing Gates, 462 U.S. at 230). The Supreme Court has consistently held that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review."  Gates, 462 U.S. at 236.  "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"  Id. (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969), overruled on other grounds by Gates, 462 U.S. at 238).

Upon review, a search warrant will be upheld if the evidence, viewed as a whole, provided the magistrate with a "'substantial basis'" for concluding that probable cause existed to

issue the warrant. Boyd v. Commonwealth, 12 Va. App. 179, 185-86, 402 S.E.2d 914, 918 (1991) (quoting Gates, 462 U.S. at 239); see Tart v. Commonwealth, 17 Va. App. 384, 389, 437 S.E.2d 219, 222 (1993) ("'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

In this case, Investigator Moss recovered sulphur, red cannon fuse, a metal pipe that was threaded on both ends, Pyrodex black powder, shot shrapnel, shredded glass, BBs, and soap, which Moss knew could be used to make napalm. Appellant admitted to Moss that he had been experimenting with the black powder and making pipe bombs. Further, Moss showed the items to Investigator Newton, who had more expertise in pipe bombs and other explosives. After looking at the items taken from appellant's home, Newton concluded that there was probable cause to charge appellant with manufacture and possession of an explosive device. Newton subsequently wrote and presented an affidavit to a magistrate and received a warrant to search appellant's entire home for additional evidence of bomb making.

While the affidavit states that police obtained appellant's consent to search his home on April 5, nothing in the record suggests that police searched any parts of the house other than his room and the outside shed on that date. All of the items seized on the first day were from appellant's bedroom, and the trial court so found.

It is reasonable to assume, based on the discovery of explosive devices and related paraphernalia in appellant's bedroom, there would also be documents and other materials used to research and construct explosives in appellant's bedroom or elsewhere in the home. Furthermore, because appellant had admitted to police that he and another student were planning a large-scale attack on their school, it was reasonable for police to search for communications

between appellant and the other student, as well as information on who else and what other locations might be involved.

The trial court noted that "[h]aving obtained the items from only the defendant's room, it is reasonable that the authorities would proceed the next day to search the remaining rooms and areas of the residence – without the last sentence of Paragraph 4 of the affidavit," which contained information received from an informant. The affidavit also indicated police knew appellant was planning a Columbine-style attack on his high school. It was also clear, based on the list of items to be seized, that police intended to search for items and evidence other than what they had already recovered from appellant's bedroom.

Even specifically excluding any evidence from an informant, the trial court found that the remaining information in the affidavit was sufficient to sustain probable cause for the second day's search warrant. See Gwinn v. Commonwealth, 16 Va. App. 972, 976, 434 S.E.2d 901, 904 (1993) ("[W]hen other evidence exists in the affidavit, which independently establishes probable cause without having to consider ['a conclusory statement by an unidentified informant, whose veracity and basis of knowledge were not established,'] the magistrate's decision to issue a search warrant will not be disturbed because the supporting affidavit contained some evidence, which, standing alone, would be insufficient to establish probable cause."). The first day's search resulted in officers recovering several pieces of threaded metal pipe, PVC pipe with end caps and a fuse, powdered sulphur and black powder, and bags labeled shrapnel (metal and glass). The affidavit for the second day's search warrant indicated that officers were looking for "components, chemical compounds, fuses, containers, devices, pipes, end caps, or other items commonly used to construct an incendiary or explosive device, *as well as* any computer equipment, printed, written, typed, or computer-generated material used to research or construct explosive or incendiary devices." (Emphasis added). The affidavit provided sufficient new

- 15 -

probable cause to support a second search of appellant's home.  Therefore, the evidence supported the trial court's denial of appellant's motion to suppress.

Because the evidence, as found by the trial court, supports the conclusion that the affidavit is more than adequate to show probable cause, we need not address the reliability of the informant.

CONCLUSION

For the reasons stated herein, we affirm the trial court's denial of appellant's motions for a change of venue and to suppress.

Affirmed.