COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Malveaux and Raphael


WILLARD CHAPMAN

                                                  MEMORANDUM OPINION[*]

v.      Record No. 2035-23-2                                 PER CURIAM
                                                      JUNE 25, 2024

HENRICO COUNTY DEPARTMENT
 OF SOCIAL SERIVCES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

(John W. Parsons; John W. Parsons, Attorney at Law, on brief), for
appellant. Appellant submitting on brief.

(Allison L. Bridges, Assistant County Attorney; Tammy L. Sossei,
Guardian ad litem for the minor child; Tammy Sossei, Esq., PLLC,
on brief), for appellee. Appellee and Guardian ad litem submitting
on brief.


Willard Chapman (father) appeals the circuit court's order terminating his parental rights.

Father argues the Henrico County Department of Social Services (the Department) failed to prove

that he had been unwilling or unable to remedy the conditions that led to the child's foster care

placement and the court erred by finding that termination of his parental rights was in the child's

best interests. We affirm.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND[1]

On appeal, we review the evidence in the light most favorable to the party prevailing below, the Department. *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 452 (2022).

Father and Logan Wright (mother) are the biological parents of X.C., who was born in January 2022. The Department had been involved with the family before X.C.'s birth; an older child was removed from the parents' custody in 2021 because of their substance abuse and the child's positive test for cocaine.[2] Father also was convicted of child abuse of that child.

At birth, X.C. tested positive for fentanyl and methadone and received care for withdrawal symptoms in the neonatal intensive care unit. The Department met with mother shortly after X.C. was born. She advised that because she was incarcerated, father would be caring for X.C. Mother was unaware that father had tested positive for cocaine following X.C.'s birth and was unsure whether father was prepared to care for an infant.

On February 7, 2022, the Department conducted a family partnership meeting to develop a plan for X.C.'s care. Mother attended the meeting virtually, due to her incarceration. Mother's grandmother also attended but advised that she was unable to take custody of X.C. At the meeting, father "refused a drug screening until he had consulted his attorney." Because the parents could not provide an alternative plan for the child's placement, the Department determined that foster care was the only option. The juvenile and domestic relations district court (JDR court) entered an

---

[1] The record in this case was sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion; the rest of the record remains sealed. *See id.*

[2] Following the older child's removal, paternity testing revealed that father was not the biological father of that child, as the Department had presumed.

emergency removal order on February 10, the date that X.C. was released from the hospital to the Department's care.

The Department referred father to mental health services for a substance-use assessment and treatment, as well as for parenting and psychological evaluations. The Department required father to obtain appropriate housing and offered him weekly supervised visitation with the child. At an adjudicatory and dispositional hearing on April 14, 2022, the JDR court found that X.C. was both a neglected child and at risk of being abused and neglected, and it approved the goal of return home concurrent with relative placement. At the time of the hearing, father still lacked permanent housing and was testing positive for cocaine. He also had been charged with a felony offense and was awaiting trial.

Father participated in the psychological evaluation. The examining psychologist found that although father loved the child, "his sobriety and lack of insight into his addiction [were] the primary barriers to his parenting." The psychologist recommended an intensive outpatient program considering father's "inability to maintain his sobriety for even a relatively brief period." Although father participated in some substance abuse counseling, he did not complete the recommended intensive outpatient treatment program.

Father's substance abuse persisted. The Department required father to be tested regularly for drug use; he tested positive for illegal substances on six out of seven tests. He refused or actively evaded drug testing on several other occasions. Father once brought "a condom filled with urine" to a meeting at which he thought he would be tested.

Initially, father was "consistent in his weekly visitation" with the child, but he cancelled later visitations because of lack of transportation. Father interacted appropriately with the child during the visits and developed a positive relationship with the child's foster parents. The Department had planned to allow unsupervised visitation once father completed his intake for

mental health services and provided three consecutive negative drug screens. However, father failed "to demonstrate the sobriety necessary to care for an infant," and the Department ultimately did not expand his visitation rights.

Although father made some progress with parent coaching, he was eventually discharged for non-participation. He also did not obtain suitable housing for the child. Father resided with his mother, with whom X.C. could not live "due to barrier crimes." Father also did not have a childcare plan for when he worked or was receiving treatment.

X.C. did well with his foster family, where he had been since his release from the hospital. He had regular medical check-ups and was healthy. He was "happy and social" and had developed a "close connection" with his foster parents and foster siblings.

Given father's failure to maintain sobriety and remedy the conditions that led to the child's placement in foster care without good cause, the Department petitioned for the termination of his parental rights on November 17, 2022. At an April 12, 2023 hearing on the Department's petition, father tested positive for cocaine. Father was on bond for a pending charge of being a felon in possession of a firearm, but his bond was revoked due to his positive drug test.[3] The JDR court terminated father's parental rights and approved the foster care goal of adoption.[4] Father appealed the JDR court's termination ruling to the circuit court but did not appeal the final permanency planning order approving the goal of adoption. *See* Code § 16.1-296(A).

---

[3] Father ultimately pleaded guilty in September 2022 and was sentenced to five years' imprisonment, all of which was suspended.

[4] The JDR court also terminated mother's parental rights, but she did not appeal.

After a July 12, 2023 trial, the circuit court found that it was in the child's best interests to terminate father's parental rights under Code § 16.1-283(C)(1) and (2).[5]

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

Father acknowledges the record does not show that he preserved his argument for appeal. Rule 5A:18 requires a contemporaneous objection to preserve an issue for appellate review, "except for good cause shown or to enable this Court to attain the ends of justice." Father asks us to invoke the ends of justice exception to Rule 5A:18 and reverse the circuit court's termination of his parental rights. For the following reasons, however, the record fails to affirmatively demonstrate a miscarriage of justice that would require reversal of the termination order because adequate evidence supports the decision. *See Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (stating that the ends of justice exception applies only where an appellant "affirmatively show[s] that a miscarriage of justice has occurred" (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997))).

---

[5] Father failed to file a timely transcript or written statement of facts in lieu of a transcript of the circuit court trial. Rule 5A:8(a). A transcript or written statement of facts is not indispensable to resolving his assignment of error, although our review is limited to the manuscript record. *See Bay v. Commonwealth*, 60 Va. App. 520, 528-29 (2012).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "'[R]etrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271 (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562 (2003)).

The limited record before us provides sufficient evidence to support the court's order terminating father's parental rights under Code § 16.1-283(C)(2). The Department offered father an extensive range of services to assist him with his substance abuse. Although father participated in some services, he routinely either refused testing or tested positive for illicit drugs, including at the April 2023 hearing when the JDR court terminated his parental rights. Moreover, father never demonstrated that he could provide suitable childcare or housing for the child. The record lacks evidence that more time would have improved father's situation or that he would have formulated any definitive plans for the child.

The record also establishes that the child was thriving in foster care. At the time of the circuit court hearing, the child had been in foster care for over two years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a

parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Human Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Because the record demonstrates that termination of parental rights under Code § 16.1-283(C)(2) was in X.C.'s best interests, father cannot show that a miscarriage of justice occurred. Therefore, we affirm the circuit court's judgment.[6]

CONCLUSION

For these reasons, the court's judgment is affirmed.

*Affirmed.*

---

[6] Father also contends the circuit court erred in terminating his parental rights under Code § 16.1-283(C)(1). Because we hold that the court's termination of parental rights under Code § 16.1-283(C)(2) was not a miscarriage of justice and affirm, we need not reach the issue of whether the court erred in terminating his parental rights under Code § 16.1-283(C)(1). *See Castillo*, 68 Va. App. at 574 n.9 ("When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment."); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and not addressing termination pursuant to another subsection).