UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Haley[*]
Argued at Fredericksburg, Virginia


RAYMOND FREDERICK GOSS

v.      Record No. 0423-23-4

COMMONWEALTH OF VIRGINIA


RAYMOND FREDERICK GOSS
                                                    MEMORANDUM OPINION[**] BY
v.      Record No. 0425-23-4                        JUDGE RICHARD Y. ATLEE, JR.
                                                    JULY 16, 2024
COMMONWEALTH OF VIRGINIA


RAYMOND FREDERICK GOSS

v.      Record No. 1463-23-4

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Robert Marshall, Assistant Public Defender (Marc Canellas,
Assistant Public Defender, on briefs), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellee.


In these appeals, consolidated for purposes of oral argument and this opinion, appellant

Raymond Frederick Goss challenges the trial court's decisions relating to the revocation of his

---

[*] Judge Haley participated in the hearing and decision of this case prior to his death on June 8, 2024.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

probation and suspended sentences for three counts of grand larceny, petit larceny, third or subsequent offense, grand larceny with the intent to sell, and possessing burglary tools. He contends that the trial court erred by finding that his refusal to complete an Intensive Outpatient Program ("IOP") was a non-technical violation. He also argues that the trial court erred by imposing an eight-month active sentence for failing to report to probation because it constituted a first technical violation. He further argues that the procedure used by the trial court violated Code § 19.2-306.1 because: (1) the trial court held separate sentencing hearings for violations originating from a single major violation report that were "considered" at a single probation revocation hearing, and (2) the trial court did not find the technical violations arose from "the same course of conduct." For the following reasons, we disagree and affirm the decisions of the trial court.

## I. BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

By orders of January 26, 2021, and upon his guilty pleas, the trial court convicted Goss for three counts of grand larceny, larceny with the intent to sell, and possessing burglary tools. The trial court sentenced him to six years of imprisonment with three years suspended for each offense. The trial court also convicted Goss for larceny as a third or subsequent offense and sentenced him to five years of imprisonment, all suspended. The trial court ordered that Goss complete probation upon specified conditions. Each of the conviction orders stated: "[T]he defendant [shall] remain in the Arlington County Adult Detention Facility and enter and complete the [Addiction, Corrections, and Treatment ("ACT")] Unit. Upon completion, he may return to Court on a Motion to Reconsider."

The orders also stated that the remainder of his sentences will be suspended if he successfully completed the ACT program.

Goss successfully completed the ACT program and moved for reconsideration of his sentences. The trial court granted the motion to reconsider and, in accordance with the original sentencing order, suspended the balances of Goss's remaining active sentences. It also added multiple special conditions of probation, including that Goss "shall attend outpatient substance abuse services with Arlington County Community Services Board" and "shall remain substance free and maintain a sober living environment that is conducive to continued recovery." It further ordered that Goss "shall comply with all the rules and requirements set by the probation officer. **Probation shall include ANY & ALL substance abuse counseling, testing and/or treatment as directed by the Probation Officer.**"

Goss started his supervised probation on October 25, 2021. In a major violation report ("MVR") dated December 20, 2022, Goss's probation officer detailed Goss's non-compliance with the terms of his probation. The probation officer reported that Goss's adjustment to supervision had been "moderate," and he continued to struggle with his drug addiction. Goss was referred to "Withdrawal Management" after testing positive for cocaine on September 22 and October 27, 2022. After completing withdrawal management in November 2022, the probation officer referred Goss to an IOP and continued individual therapy. Despite the officer's clear instructions, Goss's attendance at treatment was inconsistent, and he continued to miss appointments. Goss missed an individual and a psychiatric appointment on November 10, 2022.

Goss tested positively for cocaine on November 22 and 28, 2022, and he did not appear for a scheduled appointment on December 15, 2022. On December 19, 2022, Goss tested positive for cocaine and PCP. After the positive drug test, the probation officer instructed Goss to report immediately to withdrawal management. Goss became "uncooperative" and "disrespectful."

- 3 -

Despite the officer's request that he refrain from swearing and to lower his voice, Goss said, "I don't need no F'n cracker telling me what to do. I'm not a F'n child. Y'all just want to make F'n money off of me. I don't give a F'n about no PB-13, 14 for a damn technical violation." The officer arranged transportation for Goss to the withdrawal management facility, but he left shortly after his arrival.

The MVR alleged that Goss had failed to follow the probation condition that he "follow the Probation and Parole Officer's instructions" and "be truthful, cooperative, and report as instructed." In addition, Goss had violated the probation condition that he not "unlawfully use, possess or distribute controlled substances or related paraphernalia." Finally, Goss violated the condition that he obtain substance abuse evaluation and treatment as directed by his probation officer when he failed to attend IOP consistently and left the withdrawal management program on December 19, 2022, contrary to the officer's instructions.

Based upon the MVR, the trial court issued a capias for Goss's arrest and assigned separate circuit court numbers for five alleged probation violations: "[n]ot following instructions regarding IOP attendance" (-02), testing positively for drugs (-03), failing to attend individual and psychiatric appointments (-04), leaving withdrawal management against the probation officer's instruction (-05), and failing to report to a probation appointment (-06).

At a January 27, 2023 hearing, the trial court confirmed that it had separated the violations into five categories. The trial court stated that the proceeding was a status hearing, and it asked Goss whether he intended to contest the allegations. Goss admitted to violations -02 through -06. Although Goss asked that all the matters be heard at the same hearing because they originated from one MVR, the trial court set the matters to be heard on separate days, beginning with the -02 violation on February 10, 2023. The trial court's February 22, 2023 order stated that the January 27,

2023 hearing was a status hearing and that the court had set the dates for "adjudication and disposition" of the alleged violations.

The trial court conducted a hearing for the -02 violation on February 10, 2023. Goss objected to being sentenced on the -02 violation "separately from his other technical violations" and asked the trial court to hear them together at one time. Goss maintained that all the alleged conduct stemmed from the same course of conduct, namely his relapse into drug use and struggles with addiction. The trial court rejected Goss's claim and found that his failure to attend IOP, as it was determined appropriate and he was instructed by the probation officer, violated a special condition from the November 16, 2021 orders. The trial court noted that Goss had completed ACT twice, had involvement with IOP, and received other community intervention, all without gaining traction toward resolving his drug problems. He had more than 20 felony convictions; in addition, he had an unresolved charge of drug possession. The trial court imposed an active sentence of five months for the -02 violation.

The trial court then found that the -03 and -04 violations stemmed from the same course of conduct, and it scheduled them to be heard together on February 24, 2023. It further combined the -05 and -06 violations to be heard together on March 10, 2023. The trial court explained that the -03 and -04 violations, which involved testing positive for drug use and missing appointments, related to the "single course of conduct of the relapse." But it found that the -05 and -06 violations, which involved leaving withdrawal management and failing to report to probation, were a separate course of conduct. It explained that probation had intervened and taken Goss to withdrawal management, which he left. It referred to these as "discrete decision points," and it found that someone being taken to withdrawal management and leaving is "different . . . than just generally relapsing because there was an intervention made."

At the February 24, 2023 hearing, the trial court considered the -03 and -04 violations for testing positively for drug use and missing individual and psychiatric appointments. Goss reiterated his argument that the matters should have been consolidated for the trial court to sentence together at one hearing. The trial court found that the matters were Goss's first technical violation for purposes of sentencing under Code § 19.2-306.1(C). Accordingly, the trial court revoked Goss's suspended sentences and resuspended them, imposing no active period of incarceration.

At the March 10, 2023 hearing, the trial court reiterated that it had combined the -05 and -06 violations, which involved Goss's leaving withdrawal management and failing to report to probation at around the same time. Goss argued that the violations were second technical violations for which he could receive no more than 14 days of active incarceration under Code § 19.2-306.1. The trial court disagreed that both violations were technical. When the trial court asked, the probation officer stated that Goss "has exhausted all efforts in the community" and that no programs were available to him. Goss asked the court to continue the matter so that his counsel could "continue to look into treatment" for the drug abuse issues and mental health. The trial court stressed the importance of finding a solution for Goss that had a realistic chance of success. The court stated that it did not want to close out the case prematurely and that it "need[ed] a little more time to consider the options" it might have for sentencing. The trial court then postponed disposition until March 24, 2023.

Goss filed a notice stating that he intended to move to continue the -05 and -06 matters at the March 24, 2023 hearing. The trial court entered orders on May 17 and 19, 2023, indicating that on April 14, 2023, it found Goss in violation for the -05 matter, but it imposed no jail time. The trial court's May 19, 2023 orders in the -06 matter reflect that the court found Goss in violation of his probation, revoked the suspended sentences, and resuspended all but eight months.

Goss now appeals.

## II. ANALYSIS

A. *The trial court did not err by finding that the -02 violation was a non-technical violation.*

Goss conceded that his underlying conduct in the revocation matter designated -02 violated the terms of his probation. On appeal, he argues the trial court erred by finding the violation was a non-technical violation and by imposing an active sentence of five months' incarceration.

On an appeal of a probation revocation, the trial court's "findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). But "an issue of statutory interpretation is a pure question of law which we review de novo." *Id.* (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "Appellate courts 'must assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words when we apply the statute.'" *Henthorne v. Commonwealth*, 76 Va. App. 60, 66 (2022) (quoting *Jordan v. Commonwealth*, 295 Va. 70, 75 (2018)). "Accordingly, we will apply a statute's 'plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Id.* (alteration in original) (quoting *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020)).

"Code § 19.2-306.1 'creates two tiers of probation violations: (1) technical violations . . . and (2) non-technical violations.'" *Thomas v. Commonwealth*, 77 Va. App. 613, 621 (2023) (alteration in original) (quoting *Heart v. Commonwealth*, 75 Va. App. 453, 466 (2022)). A technical violation is "based on a probationer's failure to do one of ten enumerated actions" listed in Code § 19.2-306.1(A). *Id.* (quoting *Heart*, 75 Va. App. at 466). "When a court revokes a suspended sentence based on any of the enumerated 'technical' violations, it has limited options regarding the imposition of active incarceration." *Id.* at 622. Courts must follow the

"limited sentencing scheme under Code § 19.2-306.1(C)."[1] *Burford v. Commonwealth*, 78 Va. App. 170, 182 (2023).

"These sentencing limits do not apply, however, to what our caselaw refers to as non-technical violations." *Thomas*, 77 Va. App. at 622. Under Code § 19.2-306.1(B), a violation is non-technical if "the defendant was convicted of a criminal offense," or he "has violated another condition other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction." For a non-technical violation, the trial court "may revoke the suspension and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B).

"Not specifically mentioned in the statutory scheme is another category of violation—violations of conditions or instructions referred to as 'special.'" *Thomas*, 77 Va. App. at 623; *see also Burford*, 78 Va. App. at 183 ("Courts can impose 'special conditions' in conviction orders."). These conditions are "imposed by a court and 'are acknowledged and agreed to by a probationer in written form when meeting with his probation officer to begin a period of supervision.'" *Burford*, 78 Va. App. at 183 (quoting *Thomas*, 77 Va. App. at 623). Generally, "violations of special conditions are 'non-technical' by nature since they condition behavior beyond the list of behaviors included in Code § 19.2-306.1(A)." *Id.* The label or language of the

---

[1] Under Code § 19.2-306.1(C), a trial court "shall not impose a sentence of a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation." Upon a second technical violation, "there shall be a presumption against imposing a sentence of a term of active incarceration," but, upon a finding by the preponderance of the evidence that the defendant "cannot be safely diverted from active incarceration through less restrictive means," the trial court "may impose not more than 14 days of active incarceration[.]" Code § 19.2-306.1(C). For a "third or subsequent technical violation," "[t]he court may impose whatever sentence might have been originally imposed[.]" *Id.* The statute further provides the limitation that "[m]ultiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." Code § 19.2-306.1(A).

condition, however, is not controlling, *Thomas*, 77 Va. App. at 624, because "courts cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation,""" *Burford*, 78 Va. App. at 183 (quoting *Thomas*, 77 Va. App. at 625).

Instead, courts look to whether the "'violation conduct *matches* the conduct listed' in one of the ten subsections of Code § 19.2-306.1(A)." *Thomas*, 77 Va. App. at 624. If so, the violation is technical. *Id.* For the violation to qualify as "another condition," and thus a non-technical violation, the "condition at issue must relate to conduct that is wholly independent of the technical violations listed in Code § 19.2-306.1(A)." *Commonwealth v. Delaune*, 302 Va. 644, 657 n.3 (2023).

The conduct at issue for violation -02 is Goss's failure to follow instructions regarding IOP attendance. Goss argues that this conduct matches the conduct for the technical violation of failing to "follow the instructions of the probation officer." Code § 19.2-306.1(A)(v). We disagree.

We find *Burford v. Commonwealth* persuasive. In *Burford*, we evaluated whether the violation was of a non-technical "special condition" or a technical violation. The sentencing order required the defendant to "complet[e] a [community-based probation] mental health evaluation" and "follow[] all recommendations." 78 Va. App. at 183. After the evaluation, the defendant was instructed to undergo a psycho-sexual evaluation, which he refused to do. *Id.* Burford argued that the violation was a technical violation because it was simply a failure to follow the instructions of his probation officer. But the Court noted that the district court's "instruction to 'follow all recommendations' was explicitly tied to the district court's requirement to complete the mental health evaluation." *Id.* at 184. Thus, the "'underlying conduct' that Burford committed 'was not the failure "to follow the instructions of the probation

officer," but rather, the failure to follow the instructions of the court.'" *Id.* at 183. Thus, the violation of the special condition was a non-technical violation. *Id.* at 184.

Here, the trial court imposed the "special condition" in its November 2021 orders modifying Goss's sentence and ordering immediate probation. The trial court ordered that Goss "shall attend outpatient substance abuse services with Arlington County Community Services Board." It also emphasized that Goss's probation included all "substance abuse counseling, testing and/or treatment as directed" by his probation officer. The trial court emphasized this requirement, stating it in bold and underlined print. By including this condition, the trial court went beyond merely requiring Goss to "follow the instructions of the probation officer," as enumerated in Code § 19.2-306.1(A)(v).[2] As the Commonwealth asserts, "[w]hile the precise substance abuse treatment program was left up to the probation officer to determine, the directive that Goss's probation *shall* include substance abuse treatment came directly from the court." *See also Fazili v. Commonwealth*, 71 Va. App. 239, 254 (2019) (finding that "unless a statute specifically imposes on the circuit court the duty to set the parameters of the condition at issue, the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of those conditions"). Thus, the underlying conduct at issue here was the failure to follow the instructions of the trial court. Accordingly, the trial court did not err in finding that Goss's admitted violation in the -02 matter was a non-technical violation. As such, the sentencing limitations of Code § 19.2-306.1(A) and (C) did not apply, and the trial court did not exceed its authority in imposing an active five-month sentence.

---

[2] This is consistent with how the trial court interpreted its order when determining that the failure to attend IOP was a non-technical violation. It explained that often, a court is aware a defendant needs treatment, but it may not know the specific program that is best suited to the defendant. Specifically, it noted that it must "defer on occasion . . . to [its] Probation Department's expertise in assessing and evaluating any probationer, for particular treatment." It also noted that often a "particular program is not articulated" in court or "circumstances surrounding treatment evolve."

B. *Goss has waived his argument relating to the -06 violation because he failed to file a necessary transcript.*

Goss argues that the trial court erred by finding the -06 violation to be a non-technical violation and sentencing him to eight months of active incarceration.

"[O]n appeal[,] the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993) (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)). "Rule 5A:8 provides that the transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012).

The trial court conducted the revocation hearing for the -05 and -06 violations on April 14, 2023, and it entered the final orders on May 19, 2023. Under Rule 5A:8, Goss was required to file the transcripts within 60 days after the May 19, 2023 orders, or by July 18, 2023. The transcript of the April 14, 2023 hearing was filed late, on July 31, 2023. Goss did not seek an extension of time to file the transcript. *See* Rule 5A:8(a) (noting that the transcript deadline may be extended by this Court "only upon a written motion filed within 90 days after entry of final judgment"). "This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Bay*, 60 Va. App. at 528 (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). Thus, the April 14, 2023 transcript is not a part of the record, and we cannot consider it.

"When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii); *see also Bay*, 60 Va. App. at 528 (quoting *Turner*, 2 Va. App. at 99). "An appellate court must dispose of the

- 11 -

case upon the record and cannot base its decision upon appellant's petition or brief . . . . We may act only upon facts contained in the record." *Smith*, 16 Va. App. at 635.

Without a transcript or written statement of facts from the April 14, 2023 hearing, we cannot determine whether the trial court imposed an unlawful sentence for the -06 violation. The trial court's May 19, 2023 orders do not indicate the type of probation violation it found. Nor is it obvious from the record, without the transcript, exactly how the trial court applied Code § 19.2-306.1. In addition to the sentencing limitations, Code § 19.2-306.1(D) provides that the sentencing limitations of the statute "shall not apply to the extent that an additional term of incarceration is necessary to allow a defendant to be evaluated for or to participate in a court-ordered drug, alcohol, or mental health treatment program." Without the transcript, we cannot determine the type of probation violation. Nor can we determine whether the eight-month sentence violated the sentencing limitation in Code § 19.2-306.1 or whether it was a lawful exercise of authority under the exception in Code § 19.2-306.1(D). Accordingly, we find the transcripts are necessary to the resolution of the issue, and therefore we cannot consider Goss's arguments relating to the -06 violation.

C. *The trial court did not err by holding separate hearings for violations alleged in the same MVR.*

Goss argues that the trial court erred in "setting separate hearings for violations originat[ing] from a single Major Violation Report that were originally considered and admitted at a single probation revocation hearing."

Code § 19.2-306.1(A) provides that "[m]ultiple technical violations . . . considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section."

Goss maintains that the trial court "considered" all of the probation violations alleged in the MVR at the January 27, 2023 hearing. Thus, he argues that the trial court was required to hold a single sentencing proceeding for all the violations.

After written notice of an alleged violation, "[a] defendant is then entitled to a hearing, which has two components." *Heart*, 75 Va. App. at 472. "During the 'guilt' phase, the court determines whether there is 'good cause to believe that the defendant has violated the terms of suspension.'" *Id.* (quoting Code § 19.2-306(C)). "If a court finds good cause that a violation did occur, the court then has the option to 'revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1.'" *Id.* (quoting Code § 19.2-306(C)).

We reject Goss's assertion that the first component of the revocation proceeding, the "guilt" phase, occurred at the January 27, 2023 hearing. At the hearing, the trial court stated that the proceeding was a status hearing only. It explained how it had interpreted the allegations in the MVR and designated Goss's conduct as potential violations of probation conditions. Although the trial court asked Goss whether he intended to contest the allegations, it made no findings that Goss had violated his probation, nor did it impose any sentences for the violations. The trial court's order confirmed that the January 27 hearing was a "status hearing." The order also indicated that the court had set dates for "adjudication and disposition" of the alleged violations. Thus, the order reflects that the trial court did not adjudicate the violations during the January 27 hearing. *See Kosko v. Ramser*, 299 Va. 684, 689 (2021) ("[A] trial court speaks only through its written orders." (quoting *Davis v. Mullins*, 251 Va. 141, 148 (1996))). Accordingly, the trial court did not "consider" the probation violations for purposes of Code § 19.2-306.1(A), and it did not err by holding multiple hearings for violations originating from a single MVR.[3]

_____

[3] In *Canales v. Commonwealth*, 78 Va. App. 353, 365-66 (2023), this Court rejected the argument "that the statutory scheme *required* the trial court to conduct one comprehensive revocation hearing for the multiple technical violations alleged in the MVR." We recognized

D. *Goss's violations did not stem from a "single course of conduct."*

The final question before us is whether the trial court erred by concluding that the probation violations did not arise from a "single course of conduct" and thus could be considered separate technical violations for purposes of Code § 19.2-306.1(A).

Code § 19.2-306.1(A) expressly provides that "[m]ultiple technical violations arising from a single course of conduct . . . shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." Thus, if the -03, -04, and -05 violations arose from a single course of conduct, they should have been treated as a single technical violation for purposes of sentencing.[4]

We have recently defined the phrase "a single course of conduct" in Code § 19.2-306.1(A) to mean "an ordered continuing process, succession, sequence, or series of acts or behavior." *Canales v. Commonwealth*, 78 Va. App. 353, 368 (2023). By "limiting the scope of sentencing for multiple technical violations arising from 'a single course of conduct,'" the General Assembly "intended the trial court to focus upon the overall conduct that formed the basis for the violation of a probation condition, regardless of whether the conduct occurred more than once." *Id.*

---

that Code § 19.2-306.1(A) permits "a circuit court to hold one revocation hearing upon allegations of multiple probation violations." *Id.* at 365. But nothing in the language of Code § 19.2-306 or § 19.2-306.1 "limit[ed] a circuit court to one revocation hearing per report of probation violations." *Id.* at 366. Goss acknowledges this ruling, and states that he is not arguing that the trial court was required to hold a single hearing. Instead, he argues that the trial court *did* hold a single hearing and thus cannot hold separate sentencing hearings.

[4] Goss argues that all the violations were technical violations and that they all stemmed from a single course of conduct. Because we have already determined that the trial court did not err in finding violation -02 was a non-technical violation and the record is insufficient to determine what kind of violation the -06 violation was, we address only whether violations -03, -04, and -05 arose from a single course of conduct.

In *Canales*, the technical violations at issue fell into two categories: failing to report to the probation office as instructed and testing positive for drug use. *Id.* at 369. We rejected the defendant's assertion that "such is the behavior of a drug addict" as an explanation for why the conduct constituted a single course of conduct. *Id.* at 370. Nor was "mere temporal proximity" between the drug use and missed appointments determinative. *Id.* Instead, we found that "[u]sing controlled substances and missing appointments are not the same act or behavior." *Id.* at 369. Though we noted that the defendant could not be separately sentenced for each positive drug test or missed appointment "because the series of missed appointments [was] itself a continuing succession, sequence, or series of the same act; similarly, the two positive drug screens indicate[d] a series of the same act." *Id.* at 369-70 (footnote omitted). Thus, the defendant's violations "constituted *two* courses of conduct, *each* of which was to be treated on its own as a single course of conduct for sentencing purposes under Code § 19.2-306.1(C)." *Id.* at 370.

As we did in *Canales*, we reject Goss's similar argument that this is the behavior of a drug addict relapsing and thus a single course of conduct. The trial court concluded that the initial violations were related to Goss's relapse and were thus a "single course of conduct of the relapse." But it noted that probation intervened and took Goss for treatment, and Goss then chose to leave treatment. It found that someone leaving treatment is "different . . . than just generally relapsing because there was an intervention made." Goss relapsed, which included using drugs and missing appointments, and then he refused or left treatment after an intervention. These are not the same acts or behaviors. Rather, as the trial court noted, these are "discrete decision

- 15 -

points." At minimum, these are two separate courses of conduct, each of which can be treated as a single course of conduct for sentencing.[5]  *See Canales*, 78 Va. App. at 370.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[5] Even if the trial court was wrong in separating the conduct as it did, we nevertheless note that Goss's technical violations included failed drug tests and missing appointments. These are the exact types of violations that this Court found constituted separate courses of conduct in *Canales*.  *Canales*, 78 Va. App. at 369 ("Using controlled substances and missing appointments are not the same act or behavior.").  Thus, any error would be harmless because under *Canales*, Goss's violations did not constitute a "single course of conduct" under Code § 19.2-306.1(C).